# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Aurora Manor, Inc. v. Department of Public Health*, 2012 IL App (1st) 112775

---

| | |
|---|---|
| Appellate Court Caption | AURORA MANOR, INC., Plaintiff-Appellee and Cross-Appellant, v. THE DEPARTMENT OF PUBLIC HEALTH; TERESA GARATE, Assistant Director, The Department of Public Health; and DAMON T. ARNOLD, Director, The Department of Public Health, Defendants-Appellants and Cross-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-11-2775 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | August 23, 2012<br><br>September 20, 2012<br>September 26, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an incident in which a resident eloped from plaintiff's nursing home, an administrative law judge's finding that the Department of Public Health made its determination of violations by plaintiff within the 60-day requirement of the Nursing Home Care Act was not clearly erroneous. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-50386; the Hon. Sophia H. Hall, Judge, presiding. |

| Judgment | Affirmed in part and reversed in part. |
|---|---|
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Paul Racette, Assistant Attorney General, of counsel), for appellants. |
| | Polsinelli Shughart PC, of Chicago (Jason T. Lundy and Meredith A. Duncan, of counsel), for appellee. |
| Panel | JUSTICE STERBA delivered the judgment of the court, with opinion. Justices Fitzgerald Smith and Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1   Defendant-appellant and cross-appellee the Illinois Department of Public Health (Department) issued a notice of violation and fine assessment to plaintiff-appellee and cross-appellant Aurora Manor, Inc., after completion of a survey following an incident in which a resident eloped from Aurora Manor's facility. Following administrative review, the determination of violation and the assessment of a $5,000 fine were affirmed. Aurora Manor sought review in the circuit court, and the court voided the order imposing the violation and fine. On appeal, the Department contends it made a determination of violation after 59 days, within the 60-day limit imposed by section 3-212 of the Nursing Home Care Act (Act) (210 ILCS 45/3-212(c) (West 2008)). For the reasons that follow, we reverse the judgment of the circuit court voiding the Department's final order, thus reinstating the Department's order.

¶ 2                                    BACKGROUND

¶ 3   At approximately 3:40 a.m. on December 3, 2008, a resident of the Aurora Rehabilitation and Living Center in Aurora, Illinois, exited the facility unnoticed by staff. The resident was spotted by a medi-van driver in the parking lot, who then informed the facility. The resident was found by the medi-van driver and a nurse from the facility about 15 minutes later wandering in a T-shirt and trousers on the side of a road that ran parallel to an interstate highway. In response to the incident, the Department conducted a licensure survey investigation that was completed on February 3, 2009. On April 15, 2009, the Department issued a notice to Aurora Manor that it had committed multiple violations of the Act and the Department's regulations and assessing a $5,000 fine. On April 22, 2009, Aurora Manor requested a hearing to contest the determination of violations.

¶ 4       Prior to the hearing, Aurora Manor filed a motion to dismiss on the grounds that the Department lost subject matter jurisdiction when the Department failed to determine the existence of a violation within 60 days of completion of the inspection survey, as required by the Act. Aurora Manor argued the notice of violations was the determination required by the Act, and the notice of violations was not issued until 71 days after completion of the survey. The Department responded that it made its determination prior to the issuance of the notice, and recorded it on the "Illinois Department of Public Health; SNF/NF Survey Processing Log" (log) dated April 3, 2009, within the 60-day period. The administrative law judge (ALJ) found that "the Department determined that a violation existed on April 3, 2009, 59 days after completion of its survey." Therefore, the ALJ concluded the occurrence of violations was determined within the 60-day limit imposed by section 3-212(c) of the Act and recommended that the motion to dismiss be denied. The Department adopted this recommendation on November 2, 2009, and denied Aurora Manor's motion to dismiss.

¶ 5       An administrative hearing was held on July 13, 2010, at which three witnesses testified, including the surveyor, Daniel Pletcher. He testified that he completed the survey on February 3, 2009, and that he was the only surveyor involved in the investigation. The ALJ issued a report and recommendations on October 25, 2010, and concluded that the Department had proven by a preponderance of the evidence that Aurora Manor violated three separate Department regulations, that the violations constituted a "Type A" violation, and that a $5,000 fine was appropriate. On November 3, 2010, the Department adopted the findings of the ALJ in its final order, imposing a Type A violation and a $5,000 fine.

¶ 6       On November 24, 2010, Aurora Manor filed a complaint for administrative review in the circuit court of Cook County. Aurora Manor again argued that the Department lost subject matter jurisdiction when it failed to determine whether violations had occurred within 60 days of completion of the survey. The circuit court found "the plain language of section 3-212(c) demonstrate[d] that the Survey Processing Log [was] not the 'determination' of a violation" because it was signed by a reviewer and did not indicate its purpose. Based on a comment on the log stating that the facility comments had been reviewed, the circuit court noted that the log might be the report referred to in section 3-212(c) of the Act. Therefore, the circuit court found that the Department made its determination more than 60 days after completion of the survey, and declared the Department's final order void. The Department timely filed this appeal.

¶ 7                                              ANALYSIS

¶ 8       The Department contends that the determination of violations was made after completing a legal review and then recorded by the Director's designee on the log on April 3, 2009. Aurora Manor responds that the notice of violations is the determination, and that the log is at most only a recommendation to the Department's Director. This court reviews the findings of the administrative agency, and not those of the circuit court. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 272 (2009).

-3-

¶ 9      The appropriate standard of review is determined by whether the question is one of fact, one of law, or a mixed question of fact and law. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). The findings and conclusions on questions of fact made by the administrative agency are held to be *prima facie* true and correct. 735 ILCS 5/3-110 (West 2010). Therefore, the court will not reweigh the evidence or substitute its judgment for that of the agency, but will only ascertain if the findings of fact are against the manifest weight of the evidence. *Cinkus*, 228 Ill. 2d at 210. In contrast, an agency's determinations on questions of law are not binding on a reviewing court and are reviewed *de novo*. *Cinkus*, 228 Ill. 2d at 210-11. However, courts give substantial weight and deference to an agency's interpretation of an ambiguous statute. *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 95 Ill. 2d 142, 152 (1983). Where the agency's interpretation involves resolution of jurisdictional questions, " 'judicial deference to administrative interpretation applies in full strength.' " *Id.* at 152-53 (quoting *Pan American World Airways, Inc. v. Civil Aeronautics Board*, 392 F.2d 483, 496 (D.C. Cir. 1968)).

¶ 10     Mixed questions of law and fact are " 'questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.' " (Internal quotation marks omitted.) *Cinkus*, 228 Ill. 2d at 211 (quoting *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005)). An agency's findings on mixed questions of law and fact are reviewed under a clearly erroneous standard of review and, consequently, will not be reversed unless the reviewing court has a definite and firm conviction that a mistake has been made. *Cook County Republican Party v. Illinois State Board of Elections*, 232 Ill. 2d 231, 245 (2009). This standard affords more deference to the agency on the basis of its experience and expertise than the *de novo* standard, but less deference than the manifest weight of the evidence standard applied to an agency's findings of fact. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 392, 395 (2001).

¶ 11     The question of whether the notice of violation is the determination that a violation occurred requires interpretation of the Act. The interpretation of statutory provisions is a question of law reviewed *de novo*. *Mattis v. State Universities Retirement System*, 212 Ill. 2d 58, 76 (2004). Section 3-212(c) of the Act required, at the time in question, that violations "be determined *** no later than 60 days after completion of each inspection, survey and evaluation." 210 ILCS 45/3-212(c) (West 2008).[1] Section 3-301 of the Act requires that after "the Director or his designee determines that a facility is in violation of this Act *** he shall serve a notice of violation upon the licensee within 10 days thereafter." 210 ILCS 45/3-301 (West 2008). Therefore, according to the plain language of the statute, the Department has 60 days after completion of the survey to make a determination of a violation, and 10 days

---

[1]Section 3-212 has since been amended to allow 90 days for determinations. See 210 ILCS 45/3-212(c) (West 2010).

after making that determination to serve a notice of violation upon the licensee.[2] Equating the determination of a violation with the notice of violation would render the 10 days the Act allows to serve a notice of violation after making a determination a nullity. This would violate the rule of statutory construction that, if at all possible, a statute should be construed so that no part is rendered a nullity. See *Eads v. Heritage Enterprises, Inc.*, 204 Ill. 2d 92, 105 (2003). The primary rule of statutory construction is to give effect to the intent of the legislature, and the legislature clearly intended the determination of a violation and notice of violation to be separate events. See *Exelon*, 234 Ill. 2d at 274. Thus, we conclude that the notice of violation is not the same as the determination of the violation.

¶ 12    The question of whether the log constitutes a determination of violation requires consideration of whether the log satisfies the statutory standard for such a determination. This presents a mixed question of law and fact to be reviewed for clear error. The version of section 3-212(c) of the Act in effect at the time provides as follows:

"Upon completion of each inspection, survey and evaluation, the appropriate Department personnel who conducted the inspection, survey or evaluation shall submit a copy of their report to the licensee upon exiting the facility, and shall submit the actual report to the appropriate regional office of the Department. Such report and any recommendations for action by the Department under this Act shall be transmitted to the appropriate offices of the associate director of the Department, together with related comments or documentation provided by the licensee which may refute findings in the report, which explain extenuating circumstances that the facility could not reasonably have prevented, or which indicate methods and timetables for correction of deficiencies described in the report. Without affecting the application of subsection (a) of Section 3-303, any documentation or comments of the licensee shall be provided within 10 days of receipt of the copy of the report. Such report shall recommend to the Director appropriate action under this Act with respect to findings against a facility. The Director shall then determine whether the report's findings constitute a violation or violations of which the facility must be given notice. Such determination shall be based upon the severity of the finding, the danger posed to resident health and safety, the comments and documentation provided by the facility, the diligence and efforts to correct deficiencies, correction of the reported deficiencies, the frequency and duration of similar findings in previous reports and the facility's general inspection history. Violations shall be determined under this subsection no later than 60 days after completion of each inspection, survey and evaluation." 210 ILCS 45/3-212(c) (West 2008).

Section 1-110 of the Act defines "Director" as "the Director of Public Health or his designee." 210 ILCS 45/1-110 (West 2008).

¶ 13    According to the plain language of the statute, three actions are required before a determination can be made: (1) the Department personnel who conducted the survey must

___

[2]Both parties agree that the 10-day requirement to provide notice to the facility once a determination of violation has been made is not mandatory.

submit a copy of their report to the licensee and send the original to the appropriate regional office of the Department; (2) the licensee must be given 10 days to submit comments or documentation refuting findings in the report; and (3) the report, any recommendations for action, and the facility's comments must then be transmitted to the appropriate offices of the associate director of the Department. The Director or his designee must then determine whether the report's findings constitute a violation, taking into consideration multiple factors, including any comments or documentation provided by the facility.

¶ 14　　The Department contends that the log is the determination made by the Director's designee after receiving the report, recommendations, and facility comments. Aurora Manor responds with several alternative arguments, contending that the log is the surveyor's report or, at most, the recommendation for action required to be transmitted to the associate director of the Department before a determination can be made; that allowing the reviewer to make the final determination renders the Director a mere rubber stamp; and that the legislature could not have intended for the Department to make a determination of violation without providing a copy of the actual determination to the facility. Unfortunately, because the record contains no documentation regarding the actual process followed by the Department in making its determination, we must determine whether the ALJ's decision was clearly erroneous based on our review of the log itself, comparing the actual document to the statutory requirements.

¶ 15　　The record does not include any specific reasons for the ALJ's denial of Aurora Manor's motion to dismiss on jurisdictional grounds. In the ALJ's report and recommendations entered on October 25, 2010, the ALJ made an express finding of fact that the Department made its determination of violation on April 3, 2009. In the Department's response to Aurora Manor's motion to dismiss, the Department stated that it records the exact date of its determination of violation in every survey case on the survey processing log form, and it attached a copy of the pertinent log. There was no other document attached to the response, and we have found no other document in the record dated April 3, 2009, that could conceivably constitute a determination of violation. Thus, it is apparent that the ALJ's finding was based on his conclusion that the log constituted the determination of violation.

¶ 16　　The log was completed by someone other than Pletcher, the surveyor who conducted the inspection. However, it is not clear from the face of the document whether it was generated by the regional office or by the associate director's office. The signature line simply contains the designation "Reviewer." The majority of the fields on the log were populated by computer entries and contain background information such as the facility name and location and various date entries, including the date the immediate jeopardy was abated, the dates forms and packages are due, and future date indicators. The form includes a 60-day field that is populated with "04/04/09." A reviewer number and name are also shown in this portion of the log. The bottom section of the log contains a few handwritten comments and notations and a reviewer's signature and identification number. The comments section of the log contains two handwritten lines: "Legal review completed 4/3/09" and "Facilities comments reviewed 3/16/09." The log also shows a handwritten "1" next to the number of violations, and the line next to "A" is checked, the same violation type cited in the notice of violations

-6-

served on Aurora Manor. Although there is nothing specific on the log to indicate whether it is a recommendation or a final determination, the reviewer's signature and handwritten identification number do not match the computer-generated reviewer name and number shown earlier on the log, and Pletcher's name does not appear on the log.

¶ 17        We now turn to Aurora Manor's various arguments that the log does not constitute the determination of violation. Aurora Manor first contends that the log is the report itself. This argument has no merit on its face. The report is prepared by the surveyor and a copy of the report is given to the facility upon completion of the survey. The log contains no mention of Pletcher and is dated 59 days after the date Pletcher completed his investigation and provided Aurora Manor with a copy of the report. Notably, Aurora Manor has stated that it did not receive a copy of the log until after it received the notice of violation and later argues that if the log is the determination, it should have received a copy of the log before receiving the notice. Moreover, the record contains a document entitled "Incident Investigation Report" with Pletcher's name listed as the surveyor as well as the dates the investigation was initiated and completed, and copies of Pletcher's investigation interview notes. For all of these reasons, the log is clearly not the report required by the Act. Aurora Manor also contends that the log is not the determination because it does not reference specific violations of the Act. However, there is nothing in the statute that requires the determination itself to reference specific violations. Aurora Manor further contends that if the reviewer who prepares the log is the individual who makes the determination, the Department's Director becomes "a mere clerical worker or rubber-stamp." However, the statute clearly defines "Director" as the Director or his designee, and the designee would be anyone who is given the authority by the Director to make the determination. Aurora Manor further contends that a conclusion that the log constitutes the determination leads to absurd results, because the facility has no access to the log and does not receive a copy of it unless the facility appeals the notice. However, the statute requires the facility be given notice within 10 days after a determination has been made, but does not require the Department to provide evidence of the determination itself. Finally, Aurora Manor contends that, at most, the log is the recommendation referred to in the statute. However, there is nothing on the face of the log to indicate that it is merely a recommendation rather than the actual determination.

¶ 18        Based upon our review of the statutory requirements and the log itself, together with the entire record, we do not have a definite and firm conviction that a mistake was made by the ALJ. There is nothing on the log to indicate that it was merely a recommendation or that it originated from the regional office, and it appears that the person who completed the log could have been a second reviewer because a separate name and identification number appear earlier on the log. The comments indicate that the statutory requirement of considering the facility comments was satisfied, and further indicate that a legal review was completed, seeming to indicate a more final step in the process. Thus, the ALJ's finding that the Department made its determination of violations on April 3, 2009, within the 60-day requirement, was not clearly erroneous.

¶ 19        Aurora Manor next contends that collateral estoppel bars the Department from arguing the log represents the date the determination was made, relying on this court's decision in

*Pinnacle Opportunities, Inc. v. Department of Public Health*, No. 1-09-2090 (2010) (unpublished order under Supreme Court Rule 23). "Collateral estoppel may be applied when the issue decided in the prior adjudication is identical with the one presented in the current action, there was a final judgment on the merits in the prior adjudication, and the party against whom estoppel is asserted was a party to, or in privity with a party to, the prior adjudication." *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77 (2001). Here, the first requirement is not satisfied. The issue in *Pinnacle* was whether the 60-day limitation in section 3-212 of the Act was mandatory or directory. Thus, collateral estoppel does not apply.

¶ 20      Finally, we address Aurora Manor's contention on cross-appeal that it is entitled to attorney fees because it prevailed on its complaint for administrative review. Because we are reversing the judgment of the circuit court, this argument is no longer valid. Moreover, the circuit court did not err in denying Aurora Manor's motion for award of attorney fees and litigation expenses. Aurora Manor is not entitled to attorney fees simply because it prevailed in the circuit court. Section 10-55(c) of the Illinois Administrative Procedure Act provides:

> "In any case in which a party has any administrative rule invalidated by a court for any reason, including but not limited to the agency's exceeding its statutory authority or the agency's failure to follow statutory procedures in the adoption of the rule, the court shall award the party bringing the action the reasonable expenses of the litigation, including reasonable attorney's fees." 5 ILCS 100/10-55(c) (West 2010).

In the case *sub judice*, no administrative rule was invalidated, even at the circuit court level. Thus, the trial court correctly denied the motion for award of attorney fees and litigation expenses.

¶ 21      For the aforementioned reasons, the judgment of the circuit court declaring void the final order of the Department is reversed and the Department's final order is reinstated. The circuit court's order denying Aurora Manor's motion for the award of attorney fees and litigation expenses is affirmed.

¶ 22      Affirmed in part and reversed in part.