# Illinois Official Reports

## Appellate Court

*Stone Street Partners, LLC v. City of Chicago Department of Administrative Hearings*,
2014 IL App (1st) 123654

| | |
|---|---|
| Appellate Court Caption | STONE STREET PARTNERS, LLC, Plaintiff-Appellant, v. THE CITY OF CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-12-3654 |
| Filed | May 20, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a fine imposed on plaintiff by defendant city for building code violations, the plaintiff's complaint seeking administrative review of the dismissal of its motion to vacate the adjudication was properly dismissed for lack of jurisdiction, since plaintiff was never properly served and made a party to the proceedings and the city ordinances involved did not provide a mechanism by which such an unserved party could vacate void orders; however, the count of plaintiff's complaint seeking to quiet title by declaring the city's lien void was improperly dismissed because some relief had to be available to remedy the alleged wrong plaintiff suffered, although the remedy could not include damages for slander of title due to the immunity provided by the Tort Immunity Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-M1-450026; the Hon. Mark Ballard, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded for further proceedings. |

Counsel on
Appeal

Richard F. Linden, of Law Offices of Richard F. Linden, of Chicago, for appellant.

Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Jonathon D. Byrer, Assistant Corporation Counsel, of counsel), for appellee.

Panel

JUSTICE DELORT delivered the judgment of the court, with opinion.
Justice Hoffman concurred in the judgment and opinion.
Presiding Justice Connors concurred in part and dissented in part, with opinion.

## OPINION

¶ 1   This case involves a relatively small amount of money, but it provides an opportunity to explore deficiencies in the manner in which the City of Chicago (City) handles in-house adjudication of ordinance violations. Nearly 14 years ago, a City administrative hearing officer fined plaintiff Stone Street Partners, LLC (Stone Street), for building code violations. Stone Street never paid the fine and the City eventually recorded a lien against the subject property. Stone Street did not, however, challenge the fine until over 11 years after the City imposed it, allegedly because it had never been notified of the proceedings in the first place. After an unsuccessful attempt to vacate the fine at the administrative level, Stone Street filed a complaint in the circuit court for administrative review, equitable relief and monetary damages. The circuit court dismissed plaintiff's complaint in full. We affirm in part, reverse in part, and remand for further proceedings.

¶ 2   BACKGROUND

¶ 3   In 1999, a City building inspector found several building code violations in one of plaintiff's buildings. Rather than mailing a notice of violation and a summons for the administrative hearing to plaintiff's registered agent or to its business address, as required by City ordinance, the City sent the notice to the property itself. Although the Chicago Municipal Code does provide for notice to be given to a property owner by posting the summons on the front door of the property, this method is authorized only if notice by mail to the owner's registered agent or primary business address fails. See Chicago Municipal Code § 2-14-074(c) (amended Apr. 29, 1998).

¶ 4   Despite the faulty notice, a person named Keith Johnson appeared at the hearing on Stone Street's behalf. The City has destroyed virtually all of the administrative record, but what remains indicates that Johnson filed a written appearance for Stone Street and presented

some exhibits to the hearing officer in response to the notice of violation. The evidence was apparently unpersuasive, as the hearing officer found plaintiff liable for the violations and fined it $1,050. The final administrative judgment was "registered" with the circuit court in 2004, and in 2009 the City recorded the court's judgment with the Cook County recorder of deeds.[1]

¶ 5    Stone Street contends that it had no idea that the 1999 order existed until sometime in 2011. In September of that year, its attorney served a Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 2010)) request on the City and received a copy of the 1999 order. In October, it filed a motion to vacate and set aside the 1999 order with the City's department of administrative hearings (DOAH), contending that it had never received notice of the 1999 violations. The motion claimed, among other things, that Keith Johnson had never been authorized to represent Stone Street in any capacity, much less a legal one. Stone Street's attorney provided an affidavit identifying Johnson as a nonattorney and a caretaker for a Stone Street manager who had been gravely incapacitated in 1998 and who was no longer involved in the management of the company. The administrative hearing officer, however, found that DOAH lacked jurisdiction to vacate the order. The governing ordinance only allowed it to consider vacating default judgments within 21 days of their entry. Additionally, Johnson's participation meant that Stone Street was not defaulted but, rather, lost on the merits.

¶ 6    Stone Street then filed a multicount complaint in the circuit court. One count sought administrative review of the DOAH's 2011 order. Other counts sought a declaratory judgment, quiet title and damages for slander of title.[2] The City filed a motion to dismiss, which the circuit court granted with prejudice as to all counts. This appeal followed.

---

[1]A bit of explanation is required with respect to the various dates and proceedings involved in this record. The governing statute (65 ILCS 5/1-2.1-8(b) (West 2010)) provides that a money judgment entered by a municipal hearing officer "may be enforced in the same manner as a judgment entered by a court of competent jurisdiction." Monetary court judgments are valuable because the judgment creditor may issue garnishment process and attach the debtor's assets to collect the judgment. 735 ILCS 5/12-701 *et seq.* (West 2010). When the legislature elevated municipal administrative judgments to the dignity of court judgments, it neglected to provide a parallel collection mechanism. Accordingly, municipalities like Chicago have "filed" their own administrative judgments in circuit court and asked the court to "register" them as court judgments, making them more easily collectible. That is apparently what the City of Chicago did in 2004–five years after the hearing. On May 3, 2012, after more than the requisite seven years had passed since that "registration," the circuit court entered a form order in that case, numbered 04 M1 612624, "reviving" a judgment of $1,050 plus $350 in attorney fees entered "in this Court" on September 9, 1999. However, that language in the order is wrong. The 1999 date corresponds to the administrative judgment, not to any judgment of the circuit court. The order states that Stone Street was given "due notice" of the 2012 revival proceedings by substitute service.

[2]On appeal, plaintiff has abandoned another count alleging the unauthorized practice of law by the City. This count alleged that the City could not initiate ordinance violation complaints before its own administrative hearing department unless the complaint was signed by an attorney representing the City. It did not, in any way, address nonattorney Johnson's participation at the hearing.

¶ 8        Normally, vacating judgments after the passage of years is virtually impossible due to the presumptions of validity that apply to the judicial process. However, the City of Chicago made two critical errors in this case which invalidate the judgment. First, the City served the defendant corporation not through its registered agent, as required by City ordinances, but at the property address. Second, the City's administrative hearing officer allowed a nonattorney to appear and litigate the case on behalf of the corporation.

¶ 9        The court below dismissed all of Stone Street's claims on a motion to dismiss filed pursuant to section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)). A section 2-619 motion to dismiss admits all well-pleaded facts as true, along with all reasonable inferences that can be gleaned from those facts. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). When ruling on a section 2-619 motion to dismiss, a court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Id.* We review section 2-619 dismissals *de novo*. *Id.*

¶ 10       Putting the pieces to this puzzle together requires us to review the background of municipal ordinance adjudications in some depth. Through a series of enactments over the last 20 years or so, our legislature has facilitated the removal of ordinance enforcement hearings from the judiciary to the local administrative level. See generally Matthew W. Beaudet, *Adjudication of Ordinance Violations*, in Municipal Law § 9.1 (Ill. Inst. for Cont. Legal Educ. 2012). The underlying statute establishing in-house administrative adjudication, and raising their judgments to the dignity of court judgments, was the result of Public Act 90-516, sponsored by then-state senator Barack Obama. Pub. Act 90-516 (eff. Jan. 1, 1998). When discussing the legislation, he declared that its purpose was to "give these administrative adjudication processes some teeth" and that litigating the cases through regular courts was "overburden[ing]" them. 90th Ill. Gen. Assem., Senate Proceedings, Mar. 19, 1997, at 114 (statements of Senator Obama). The process has been so successful that the City of Chicago has established a large central hearing facility that rivals Illinois county courthouses in its size and case volume. See City of Chicago Administrative Hearings, *available at* http://www.cityofchicago.org/city/en/depts/ah/ supp_info/hearing_location.html (last visited Mar. 5, 2014).

¶ 11       Despite the fact that circuit court judges do not preside, and the rules of evidence may be relaxed, defendants in these hearings are still entitled to due process of law. It is well settled that "[a] fair hearing before an administrative agency includes the opportunity to be heard, the right to cross-examine adverse witnesses, and impartiality in ruling upon the evidence." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 95 (1992); see also *Waicekauskas v. Burke*, 336 Ill. App. 3d 436, 438 (2002) (invalidating municipal adjudication process on due process grounds).

¶ 12       Section 2-14-074(c) of the Chicago Municipal Code requires that notices to corporate defendants for administrative hearings against them must be sent to the address of the corporation's registered agent. Chicago Municipal Code § 2-14-074(c) (amended Apr. 29, 1998). There is no dispute that, in this case, the City sent the notice to the property address and not to the registered agent. Accordingly, the service was not accomplished by any of the various manners authorized by the governing ordinance. To pass constitutional muster, notice in administrative proceedings need only be "reasonably calculated, under all the circumstances, to apprise [the respondents] of the pendency of the action and afford them an

opportunity to present their objections." (Internal quotation marks omitted.) *Horn v. City of Chicago*, 860 F.2d 700, 704 (7th Cir. 1988). However, although administrative proceedings may relax formalities which apply in courts of record, and notice to a defendant may be accomplished by many different means, the City has imposed limitations on itself, and it is required to follow its own ordinances. See 5 Eugene McQuillin et al., The Law of Municipal Corporations § 15.28, at 174-75 (3d ed., rev. vol. 1996). As an administrative agency created by ordinance, the DOAH may act only in accordance with the power conferred on it by the City council. See, *e.g.*, *Pearce Hospital Foundation v. Illinois Public Aid Comm'n*, 15 Ill. 2d 301, 307 (1958).

¶ 13    Although service of the notice of hearing must be sent to the registered agent, the City notes that no similar requirement applies to service of the order. Accordingly, the City claims, its transmission of the 1999 order to Stone Street's business address was sufficient. However, it is well established that a "defendant's actual knowledge that an action is pending or that service has been attempted is not the equivalent of service of summons and would not relieve the plaintiff of its burden or vest the court with jurisdiction." *Equity Residential Properties Management Corp. v. Nasolo*, 364 Ill. App. 3d 26, 35 (2006).

¶ 14    We must therefore turn to the question of whether Stone Street waived any objection to service through Johnson's participation at the hearing. Johnson was a nonattorney who worked as a caretaker for a gravely ill corporate officer. He filed a written appearance on behalf of the corporation. We have little information about what else happened at the hearing other than that it ended with the imposition of a fine against the corporation. This dearth of information results from the City's own destruction of most of the records from the hearing, a destruction it undertook even though the fine had not been paid, and the City was pursuing collection of it–albeit at a glacial pace. Appearance and active participation in a judicial proceeding, of course, waives any objection regarding improper service. 735 ILCS 5/2-301(a) (West 2010); *GMB Financial Group v. Marzano*, 385 Ill. App. 3d 978, 996 (2008). The same principle applies regarding participation at administrative hearings. *Greene v. Board of Election Commissioners*, 112 Ill. App. 3d 862 (1983).

¶ 15    Nonattorneys, including paralegals and claims negotiators, provide valuable professional services to corporations in the same manner as licensed attorneys do. Under the general principles of agency, a nonattorney can represent the corporation in negotiations with customers, sign contracts for the corporation, and the like. However, the City's administrative hearings, like judicial proceedings, involve the admission of evidence and examination and cross-examination of sworn witnesses–all of which clearly constitute the practice of law. The City argues strongly that these hearings are so inconsequential that corporations need not be represented by licensed attorneys, but to counter that point, we need look no further than *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838 (2007), where this court upheld the DOAH's imposition of a fine of $135,825 for multiple violations of a valet parking ordinance. The City also presents its administratively adjudicated traffic citations as an example of cases so simple that anyone can successfully handle them, but corporations do not drive motor vehicles. Administrative hearings, whether held by a municipality or state agency, necessarily implicate the full range of the powers of sovereign governments over individuals and other entities. Their decisions can implicate the ability to practice a chosen profession or engage in a business, and can result in the imposition of crushing financial sanctions. This is true regardless of whether the rules of the evidence are

relaxed. Representation of a corporate defendant at these hearings requires expertise only a lawyer is qualified to provide, such as drafting motions; interpreting laws and ordinances; determining whether to call certain witnesses; how to examine the witnesses; how to properly secure, object to, or admit evidence; and to analyze whether a settlement offer is favorable. Additionally, there is little distinction between the range of remedies available in administrative proceedings and those available in a court of law, with the exception of imprisonment and equitable relief. In a court of law, corporations cannot represent themselves through a nonattorney except in the simplest small claims cases. The similarity between modern administrative proceedings and traditional judicial ones compels us to reject the City's contention that the proceedings are so manifestly different that corporations can appear at them through non-lawyers.

¶ 16 There is no bright-line test to distinguish what is, or is not, the practice of law. "It is immaterial whether the acts which constitute the practice of law are done in an office, before a court, or before an administrative body. The character of the act done, and not the place where it is committed, is the factor which is decisive of whether it constitutes the practice of law." *People ex rel. Chicago Bar Ass'n v. Goodman*, 366 Ill. 346, 357 (1937). A different panel of this court struggled with the question in *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 823 (2009), finding, in a highly fact-based decision, that a lay representative of a corporation attending an unemployment compensation hearing did not engage in the unauthorized practice of law because "the character of the actions did not require legal knowledge or skill; and he supplied simple, fact-based answers." Similarly, in *Grafner v. Department of Employment Security*, 393 Ill. App. 3d 791 (2009), a divided panel of this court found that the relatively innocuous actions that had already been taken in a particular hearing by a nonattorney representative of the employer did not rise to the level of the practice of law so as to cause the hearing to be a nullity. One justice specially concurred, noting "[t]his is the unauthorized practice of law." *Id.* at 805 (O'Brien, P.J., specially concurring). Even so, the *Sudzus* and *Grafner* analyses did not persuade the Board of Governors of the Illinois State Bar Association (ISBA), which, in May 2010, reviewed the newly adopted Illinois Rules of Professional Conduct of 2010 and reaffirmed its March 1994 advisory opinion holding that the pervasive practice of nonattorneys giving legal advice, preparing evidence for presentation and examining witnesses and otherwise participating at unemployment administrative hearings constituted the unauthorized practice of law. Ill. State Bar Ass'n Op. No. 93-15 (Mar. 1994). We find neither *Sudzus* nor *Grafner* to be persuasive on the larger issue presented here, but instead find the ISBA's position to be well-taken, and so hold that representation of corporations at administrative hearings–particularly those which involve testimony from sworn witnesses, interpretation of laws and ordinances, and can result in the imposition of punitive fines–must be made by a licensed attorney at law.

¶ 17 Our supreme court quite recently reaffirmed a rule dating back to "as early as Lord Coke's time"[3] that a corporation must be represented by counsel in legal proceedings. See *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, ¶ 17 (citing *Nixon, Ellison & Co. v. Southwestern Insurance Co.*, 47 Ill. 444, 446 (1868)). The reason for this requirement, the court stated, was that "[i]t is not every case where the views or interests of a principal and the corporation mesh. By requiring an attorney to represent a corporation in

---

[3]Referring to English jurist Lord Edward Coke (1552-1634).

*legal proceedings*, this problem is mitigated. \*\*\* Courts in this country, including this court, unanimously agree that a corporation must be represented by counsel in *legal proceedings*." (Emphases added.) *Id.* ¶¶ 17, 22. The *Downtown Disposal* court found that an administrative review complaint filed by a nonattorney was not a complete nullity, but could be validated by having a licensed attorney file an amended complaint, even after the normal administrative review period had elapsed. The three dissenting justices noted that even creating that narrow exception violated an "unbroken line of precedent dating back before the Civil War." *Id.* ¶ 41 (Karmeier, J., dissenting, joined by Kilbride, C.J., and Thomas, J.). Despite the split on whether the exception should be created to the nullity rule, all seven justices agreed that nonattorneys cannot represent corporations in matters requiring the expertise of an attorney. *Id.* ¶¶ 22, 41.

¶ 18        The City presents several reasons why nonattorneys should be allowed to represent corporations at administrative hearings; none of them is meritorious. First, it cites a series of statutes and administrative regulations providing that nonattorneys can represent corporations at various types of administrative hearings. The City notes that it specifically allows nonattorneys to represent corporations at its administrative hearings. See City of Chicago Department of Administrative Hearings R. 5.1, *available at* https://www.cityofchicago.org/ city/en/depts/ah.html (last visited Mar. 6, 2014) (select "Rules and Ordinances"; then select "Rules and Regulations"; then select "Chapter 5. Right to Representation"). This grant of authority may be efficacious, but it clearly usurps the authority of our supreme court to administer the practice of law. "The General Assembly has no authority to grant a layman the right to practice law." *Goodman*, 366 Ill. at 352 (citing *In re Day*, 181 Ill. 73, 84 (1899)). This problem apparently arises frequently at Chicago administrative hearings. See *Downtown Disposal Services, Inc.*, 2012 IL 112040, ¶ 8 (quoting trial judge who found that legal instructions given by Chicago administrative hearing officers to nonattorneys representing corporate defendants that the nonattorney had the "right to appeal this" were "clearly erroneous" (internal quotation marks omitted)). Since only the Illinois Supreme Court can regulate the practice of law, the statutes and regulations on which the City relies are of highly doubtful validity. See *Goodman*, 366 Ill. at 349; *Downtown Disposal Services, Inc.*, 2012 IL 112040, ¶ 14.

¶ 19        In its petition for rehearing, the City, joined by the Attorney General as *amicus curiae*, suggests that our holding regarding nonattorney representation of corporations at administrative hearings and our questioning of administrative regulations purporting to allow unlicensed persons to practice law would have deleterious consequences. We disagree. As we have noted, except in a small claims case, no judge sitting in a circuit court would allow a corporation to appear as a party through a nonattorney employee or officer. Judges routinely provide admonitions in such situations and grant continuances to obtain counsel. Administrative agencies vested with the power of government to punish, fine, and transfer property should, and must, follow the same principal. If anything, our holding will protect the rights of corporations which may lose valuable rights or property because they have lost administrative hearings due to the presence of an unqualified representative working on their behalf. All that being said, we note that this case hinges largely on the allegation of lack of proper service. When a corporate administrative defendant has been properly served, and a judgment has been entered against it, the judgment is properly cognizable as a standard

default, regardless of whether the corporation did not appear at all or appeared through a nonattorney.

¶ 20    Second, the City cites Illinois Supreme Court Rule 282(b) (Ill. S. Ct. R. 282(b) (eff. July 1, 1997)), which allows corporations to defend against small claims cases through a nonattorney officer or manager. However, it neglects to cite Rule 281, which defines "small claim[s]" only as including "civil action[s] based on either tort or contract for money not in excess of $10,000, exclusive of interest and costs, or for the collection of taxes not in excess of that amount." Ill. S. Ct. R. 281 (eff. Jan. 1, 2006). Ordinance enforcement and the imposition of fines are not based in "tort or contract" and so clearly fall outside this definition. Rule 282(b) does not legitimize Johnson's representation of Stone Street at the 1999 hearing.

¶ 21    Johnson's appearance at the hearing does not change the result. A defendant does not waive objection to jurisdiction if it participated through someone who was unauthorized to do so–*even if the representative is a licensed attorney at law*. When an attorney appears of record for a party, there is a rebuttable presumption that the party authorized the attorney to do so. *Gray v. First National Bank of Chicago*, 388 Ill. 124, 129 (1944). However, "when the facts show a lack of authorization, express or implied, and there is no proof of ratification, the acts of counsel are a nullity." *Id.* Where affidavits establish that an attorney was not acting as the party's attorney, no general appearance is made. *People v. Mickow*, 58 Ill. App. 3d 780, 783 (1978).

¶ 22    That brings us to the question of the appropriate remedy and the various counts which Stone Street presented in its complaint. In count I, Stone Street sought administrative review of the DOAH's 2011 order. Neither a court nor a governmental body gains jurisdiction over a nonserved defendant merely by the passage of a long period of time. A judgment entered without jurisdiction–that is, because of lack of service–is void and can be vacated at any time, either directly or collaterally. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 103 (2002). In January 2012, Stone Street sought relief by filing a motion before the DOAH which, while not titled as such, was essentially a motion to quash service and void the 1999 order. However, the DOAH determined that it had no jurisdiction to consider such a motion because the City ordinances provided no mechanism for un-served defendants to vacate void orders. Stone Street disagrees, relying on a City ordinance which states in part:

> "Petition to set aside default order.
>
>     (a) An administrative law officer may set aside any order entered by default and set a new hearing date, upon a petition filed within 21 days after the issuance of the order of default, if the administrative law officer determines that the petitioner's failure to appear at the hearing was for good cause or, at any time, if the petitioner establishes that the petitioner was not provided with proper service of process. If the petition is granted, the administrative law officer shall proceed with a new hearing on the underlying matter as soon as practical." Chicago Municipal Code § 2-14-108(a) (added Apr. 29, 1998).

¶ 23    A related code section provides that a "default" as entered only "[i]f at the time set for a hearing the recipient of a notice of violation or a notice of hearing, or his or her attorney of record, fails to appear." Chicago Municipal Code § 2-14-078 (amended Apr. 29, 1998).

¶ 24    The City argues that section 2-14-108(a) only applies to default orders. We give substantial weight to the agency's opinion about an ambiguous statute or regulation, and we

also give deference when the agency's interpretation relates to its own jurisdiction. See *Aurora Manor, Inc. v. Department of Public Health*, 2012 IL App (1st) 112775, ¶ 9. Our supreme court has long held that because "an administrative agency is a creature of statute, any power or authority claimed by it must find its source within the provisions of the statute by which it is created." (Internal quotation marks omitted.) *County of Knox ex rel. Masterson v. Highlands, L.L.C.*, 188 Ill. 2d 546, 554 (1999).

¶ 25   We agree with the City's interpretation of section 2-14-108(a), noting that the title of the section refers only to default orders, and further finding that the term "default" in the first clause modifies both the clause regarding good cause and the clause following the "or" dealing with service of process. Stone Street was not held in default at the 1999 hearing–perhaps it should have been, on the basis that Johnson's appearance was a nullity. Nonetheless, the 1999 order mentions nothing about default, and it was clearly entered after some sort of adjudication on the merits. Accordingly, the DOAH correctly determined it had no jurisdiction to consider Stone Street's motion to vacate, and the circuit court correctly confirmed that administrative decision on review. We therefore affirm the dismissal of count I of the complaint.

¶ 26   Count II of the complaint is labeled both as a claim to quiet title and for a declaratory judgment. Specifically, the forms of relief it requests are: (1) a declaration that the City's lien on Stone Street's property is void; (2) a declaration that the 1999 administrative judgment is null and void; and (3) a judgment against the City for slander of title and attorney fees. The City's failure to provide defendants with a procedure to quash service of process and vacate void orders leaves Stone Street without an in-house remedy. As we explained above, the complaint and affidavits set forth sufficient facts to support a valid claim based on voidness of the 1999 order. The City contends here that Stone Street is left without a remedy because it failed to seek administrative review of the 1999 order. Indeed, it is well settled that "[w]here the statute creating or conferring power on an administrative agency expressly adopts the Administrative Review Law, a circuit court has no authority to entertain an independent action." *Metzger v. DaRosa*, 209 Ill. 2d 30, 42 (2004). However, a defendant cannot be expected to timely seek review of an order of which it was not properly notified.

¶ 27   In *Sarkissian*, 201 Ill. 2d at 104-05, our supreme court noted that the Code of Civil Procedure makes no "provision for the filing of a motion to challenge a judgment on voidness grounds" and that section 2-1401(f) (735 ILCS 5/2-1401(f) (West 2000)) "expressly abolishes all other common law means of attacking void judgments." The court noted that a void order may be attacked at any time. *Sarkissian*, 201 Ill. 2d at 103. It further held that the general requirements for a valid section 2-1401 petition cannot, and do not, apply to petitions to invalidate service of process. *Id.* at 105. In particular, the supreme court held that a petition challenging a void judgment in the nature of a motion to quash: (1) need not allege either a meritorious defense or due diligence; and (2) may be brought at any time, not merely within two years of the final order. *Id.* at 104. To resolve the legislature's failure to provide a specific mechanism to vacate void orders more than two years after their entry, the *Sarkissian* court created one. It held that while a pleading to challenge a void judgment based on invalid service must be brought under section 2-1401, it could be brought more than two years after the judgment was entered, despite the time limitation established by the legislature. *Id.*; see also *Protein Partners, LLP v. Lincoln Provision, Inc.*, 407 Ill. App. 3d 709, 715 (2010) (noting that "[o]ur courts have repeatedly held that an untimely

postjudgment motion must be viewed as a section 2-1401 motion by the appellate court because it is the only vehicle that a party may use once the 30 days have expired").

¶ 28    Using *Sarkissian* as our guide, we hold that cases such as *Metzger* do not bar us from providing a remedy. Because some sort of equitable relief must be available to remedy the alleged wrong suffered by Stone Street, the circuit court erred in dismissing count II. However, the relief available in count II on remand, should Stone Street prove the underlying facts, may not include damages for slander of title, as that claim is barred for the reasons set forth below. Additionally, we note that this remedy is only potentially available to Stone Street because of the unusual convergence of both of two qualifying factors: (1) the City's failure to properly serve defendant in the first instance, a situation normally addressed in courts by a motion to quash; and (2) the fact that Stone Street did not waive jurisdiction merely because a nonauthorized representative of it appeared at the hearing. Administrative judgments against corporations that were properly served must still be reviewed under the standards established in the governing ordinance with respect to motions to vacate default judgments. While we reverse the dismissal of the main portion of count II, we affirm the dismissal of the third portion of the prayer for relief of count II.

¶ 29    Our dissenting colleague suggests that the 1999 judgment was somehow subject to administrative review not merely for the usual 35 days, but for years and years until, at some point, Stone Street found out about it. Section 3-103 of the Administrative Review Law provides that a losing party may file for administrative review "within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 735 ILCS 5/3-103 (West 2010). The "served upon" language seems to recognize there may be a delay between the conclusion of the hearing and the issuance of the decision. Even so, one can interpret the 35-day "was served" period as running from the date of mailing or from the date of receipt. If the period ran from the date of receipt, the dissent would have a valid point. However, in a case the City cites in its own brief, our supreme court has resolved the statutory ambiguity, holding that decisions served by mail must be appealed 35 days after the date the decision is placed in the mail. 735 ILCS 5/3-103 (West 2010); *Nudell v. Forest Preserve District*, 207 Ill. 2d 409, 424 (2003). Therefore, Stone Street could not have appealed the 1999 decision in 2009 when it claims to have first found about it. As interpreted by the *Nudell* court, the Administrative Review Law cannot toll the 35-day deadline when losing parties are unaware of the pending administrative hearing in the first instance, allowing them to file for review 5 or 10 years after the fact. Had Stone Street filed for administrative review of the 1999 judgment in 2009 or 2011, the City would have undoubtedly claimed it was untimely, and it would have been correct.

¶ 30    Further, the dissent suggests that a different remedy was created to assist a similarly situated administrative defendant by *In re Abandonment of Wells Located in Illinois*, 343 Ill. App. 3d 303 (2003). In that case, however, the court remanded the case back *to the circuit court* "to resolve the factual dispute and to determine whether the Department complied with the notice requirements and satisfied due process requirements." *Id.* at 308. In so doing, the *Abandonment of Wells* court recognized that expired time limitations caused the administrative agency to lose jurisdiction, but placed the matter in the hands of the circuit court, which had plenary equitable jurisdiction to resolve the dispute. In short, that is precisely the remedy we provide here, albeit under the framework of declaratory relief.

¶ 31    Count III is a claim for slander of title based on the City's recording of the judgment lien against Stone Street's property. In that count, Stone Street claims that the City knew that the 1999 order was void at the time that the City recorded the order in 2009 and knowing it was void. The City moved to dismiss both because it was time-barred and because section 2-107 of the Local Governmental and Governmental Employees Tort Immunity Act immunizes it from liability for libel and slander. See 745 ILCS 10/2-107 (West 2010). Stone Street glosses over the tort immunity defense in its briefs before this court, preferring instead to focus only on whether the claim pled the elements of a slander-of-title claim and the merits of a statute-of-limitations argument raised by the City. See 745 ILCS 10/8-101(a) (West 2010) (one-year statute of limitations applies for tort claims against government entities). We need not reach the limitations issue because the immunity provided by section 2-107 is absolute and there are no exceptions. Plaintiff has not argued otherwise (see Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (claims not raised are forfeited)), and we may affirm on any ground appearing in the record (see *Camper v. Burnside Construction Co.*, 2013 IL App (1st) 121589, ¶ 29). The circuit court correctly dismissed this count.

¶ 32    On rehearing, the City has asked us to grant a certificate of importance under Illinois Supreme Court Rule 316 (eff. Dec. 6, 2006) to facilitate its appeal of this decision to the Illinois Supreme Court. This court has consistently determined that it will use this power sparingly and defer to the Illinois Supreme Court's determination of which cases it deems worthy of review. *People v. Cherry Valley Public Library District*, 356 Ill. App. 3d 893, 900 (2005). We decline to do so here.

¶ 33    To summarize; as to count I, we affirm the circuit court's affirmance of the DOAH's administrative ruling; we reverse the circuit court's dismissal of count II, less the prayer for monetary damages, and remand it for further proceedings consistent with this order; and we affirm the circuit court's dismissal of count III.

¶ 34    Affirmed in part and reversed in part; cause remanded for further proceedings.

¶ 35    JUSTICE CONNORS, concurring in part and dissenting in part.

¶ 36    Fundamentally, this case is about the procedural methods that are available, and those that are not, to litigants who claim that an administrative judgment is void. We all agree that the procedures surrounding the DOAH hearing in 1999 were, if plaintiff's allegations are true, woefully inadequate. What the majority and I disagree about is how that proceeding and the resulting administrative judgment can be reviewed by the courts. I agree with my colleagues that plaintiff's quiet-title and slander-of-title claims cannot stand and that DOAH's 2011 administrative decision should be confirmed, so I concur in the court's judgment and opinion on those points. But I must respectfully dissent from the majority's conclusion that the declaratory judgment claim should proceed.

¶ 37    The majority holds that an allegedly void administrative judgment may be challenged at any time via a declaratory judgment action. In my opinion, however, our constitution, statutes, and precedent preclude such a claim. This case is, to be blunt, a civil procedure disaster. But while the majority opinion amply documents the City's procedural failures, plaintiff is not blameless. In my opinion, regardless of the merits of plaintiff's arguments about the validity of the 1999 order, plaintiff made several procedural decisions that preclude the courts from granting any relief in this case.

- 11 -

¶ 38     At the heart of this case is the inescapable fact that the 1999 order is a final administrative judgment. While the circuit court has general subject matter jurisdiction over nearly every kind of claim, the Illinois Constitution of 1970 permits the courts to review administrative orders only as provided by statute. See Ill. Const. 1970, art. VI, § 9. As the supreme court has explained, "[b]ecause review of a final administrative decision may be obtained only as provided by statute, a court exercises 'special statutory jurisdiction' when it reviews an administrative decision. Special statutory jurisdiction is limited to the language of the statute conferring it *and the court has no powers from any other source*. A party seeking to invoke a court's special statutory jurisdiction must strictly comply with the procedures prescribed by the statute." (Emphasis added.) *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 178 (2007).

¶ 39     As an administrative judgment, review of the 1999 order can only be had pursuant to the Administrative Review Law, and it is undisputed that plaintiff failed to petition for review within 35 days after service of the judgment as required by the law. See 735 ILCS 5/3-103 (West 2010). Yet this was not plaintiff's fatal mistake. As the majority points out, a party can hardly be expected to seek timely review of an administrative judgment when it does not know the judgment exists. See *supra* ¶ 26. The fatal mistake was that plaintiff *never* sought administrative review of the judgment even after plaintiff learned of it. To be fair, had plaintiff done so it is very likely that the City would have moved to dismiss the petition as untimely. Yet we have previously rejected such a motion where the party seeking administrative review did not receive notice of the judgment, which is what plaintiff alleges happened here. In the case of *In re Abandonment of Wells Located in Illinois*, 343 Ill. App. 3d 303 (2003), the plaintiff petitioned for administrative review after the 35-day deadline but argued that it had not received notice of the judgment. We reversed the circuit court's order dismissing the petition on timeliness grounds and remanded for an evidentiary hearing, holding that if the administrative agency had in fact failed to properly serve notice of the judgment on the plaintiff, then that alone would be grounds for vacating the administrative judgment. See *id.* at 306-09.

¶ 40     Based on *Abandonment of Wells*, it is debatable whether a motion to dismiss on timeliness grounds would have succeeded, since that would depend on whether the City could prove that DOAH had properly served plaintiff with notice of the 1999 order. See 735 ILCS 5/3-103 (West 2010) (requiring that, in the absence of contrary provisions in an enabling statute, an administrative decision must be served either by personal delivery or by mail to "the party affected by the decision at his or her last known residence or place of business"). But we will never know whether the City could have done so because plaintiff never bothered to seek administrative review of the order when it learned of the order's existence. Instead, plaintiff filed a futile motion to vacate the 1999 order with DOAH and then, when that failed, attempted to bootstrap review of the 1999 order into a misguided petition for administrative review of the new 2011 order. I agree with my colleagues that new petition was properly dismissed, given the clear limitations the Chicago Municipal Code places on DOAH's authority to vacate orders.

¶ 41     Plaintiff also attempted several collateral attacks on the 1999 order via claims for quiet title, slander of title, and a declaratory judgment. In addition to the problems with the quiet-title and slander-of-title claims that the majority has already mentioned, the fundamental problem with these collateral attacks is that they are not viable methods of

seeking review of an administrative judgment. We considered this issue in detail in *Stykel v. City of Freeport*, 318 Ill. App. 3d 839 (2001), and we determined that the express terms of the Administrative Review Law preclude all common-law and equitable collateral challenges to an administrative decision. See *id.* at 845-47. Although the majority believes that there must be some equitable method of reviewing the 1999 order (see *supra* ¶ 28), *Stykel* rejected that very notion and held that declaratory judgments are not an available option for obtaining review of an administrative judgment. See *Stykel*, 318 Ill App. 3d at 847; see also *id.* at 845 ("[W]here the Review Law embraces administrative agencies subject to its terms, it becomes the sole means of securing judicial review of decisions of administrative agencies and eliminates the heretofore conflicting and inadequate common-law and statutory remedies."); 735 ILCS 5/3-102 (West 2010) (stating that in all administrative review cases, "any other statutory, *equitable* or common law mode of review of decisions of administrative agencies heretofore available shall not hereafter be employed" (emphasis added)). In fact, not even section 2-1401 petitions (735 ILCS 5/2-1401 (West 2010)), which are the traditional method of challenging a void or voidable judgment, are an available option in this context. See *Krain v. Department of Professional Regulation*, 295 Ill. App. 3d 577, 580-81 (1998); *Rodriguez v. Du Page County Sheriff's Merit Comm'n*, 328 Ill. App. 3d 899, 905 (2002).

¶ 42 This rule is known as the doctrine of exhaustion of administrative remedies, under which "a party may not seek judicial relief from an administrative action unless the party has exhausted all available administrative remedies." *Arvia v. Madigan*, 209 Ill. 2d 520, 531 (2004). The supreme court explained the purpose and scope of the rule in *Arvia*:

> "Importantly, the exhaustion doctrine extends to administrative review in the circuit court. [Citation.] That is, where the Administrative Review Law is applicable and the circuit court may grant the relief a party seeks within the context of reviewing the agency's decision, a circuit court has no authority to entertain independent causes of action regarding the agency's actions. [Citations.] Any other conclusion would enable a party to litigate separately every alleged error committed by an agency in the course of the administrative proceedings." (Internal quotation marks omitted.) *Id.* at 532.

¶ 43 There are some exceptions to this doctrine, but they are extremely limited in number and are strictly construed. See *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 309 (1989); see also *Stykel*, 318 Ill. App. 3d at 848-50 (finding that a civil rights claim against an administrative agency is not preempted by the Administrative Review Law). Yet even if an exception might apply in this case, plaintiff has not raised one nor even acknowledged that the doctrine exists, so the issue is forfeit. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (points not argued are forfeit); *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 300-01 (2006) (issues not raised in the circuit court are forfeit on appeal).

¶ 44 In my opinion, the law is clear that plaintiff cannot attempt an end run around the Administrative Review Law by seeking relief from the 1999 order in the form of a declaratory judgment, much less a claim for quiet title or slander of title. Plaintiff's only option was a petition for administrative review of the 1999 order, and plaintiff has not done that. Not even plaintiff's petition for administrative review of the 2011 order can save the issue, given that plaintiff sought only review of DOAH's 2011 order denying the motion to vacate.

¶ 45    I agree with my colleagues that the City's actions in this case are troubling and that its system of adjudicating ordinance violations deserves to be reviewed. But this is not the case to do so. Plaintiff's procedural decisions have fatally compromised our ability to review the merits of its claims, and allowing plaintiff to mount a backdoor challenge to the 1999 order in the guise of a declaratory judgment is contrary to our precedent and the express terms of the Administrative Review Law. I would hold that plaintiff's only option for challenging the 1999 order as void was to file a petition for administrative review of that order. Even given the timeliness problem in this case, review would still have been possible if the City was unable to prove that it had properly served plaintiff with notice of the administrative judgment. But because plaintiff could have but did not seek review of the 1999 order as required by the Administrative Review Law, the courts have no power to review the merits of plaintiff's claims under any other mechanism.

¶ 46    Aside from my disagreement with the majority on the viability of the declaratory-judgment count, I also cannot join with the majority on three other points. The first point is the majority's holding that "representation of corporations at administrative hearings *** must be made by a licensed attorney at law." *Supra* ¶ 16. The City, joined by the Illinois Attorney General as *amicus curiae*, argued in its petition for rehearing in this case that this extremely broad holding is inconsistent with our precedent and will have a significant impact on all administrative hearings conducted throughout Illinois.

¶ 47    The majority does not say so explicitly, but it has in effect invalidated not only DOAH Rule 5.1 but also every other administrative rule that allows for nonattorneys to appear on behalf of corporations at an administrative hearing. There are several problems with the majority's approach to this issue, in my view. The first, and perhaps the most important, is that this issue was not presented on appeal and in any event is not essential to the ultimate holding in the case. Plaintiff's argument on appeal was not that Keith Johnson's appearance at the 1999 hearing rendered the proceedings invalid because he was not an attorney but, rather, that the proceedings were invalid because Johnson was not authorized to represent plaintiff *at all*. In the affidavit of Brian Farley, which plaintiff filed as part of its motion to vacate the default before DOAH, Farley attests that Johnson "was not an employee of [plaintiff] and was not authorized to represent [plaintiff] in this matter." While plaintiff initially also contended in the circuit court that the proceedings were invalid because Johnson was not an attorney, plaintiff failed to argue that issue on appeal. The facial validity of DOAH's practice of allowing nonattorney representation at its hearings was therefore neither properly briefed nor argued in this court.

¶ 48    The question of whether Johnson's status as a nonattorney invalidates the proceedings is thus a moot point, given not only that plaintiff abandoned that issue on appeal but that we can resolve the issue of whether the proceedings were invalid without examining the unauthorized practice of law issue. If the fact that Johnson was not authorized to represent plaintiff in any capacity renders the proceedings invalid, then it is irrelevant whether his status as a nonattorney would do so as well. We have no authority to issue advisory opinions, which are opinions that "resolve[ ] a question of law which is not presented by the facts of the case." *People ex rel. Partee v. Murphy*, 133 Ill. 2d 402, 408 (1990); see also *Duncan Publishing Co. v. City of Chicago*, 304 Ill. App. 3d 778, 783 (1999) ("Illinois courts are foreclosed from issuing advisory opinions and cannot indulge in rendering opinions simply for the sake of creating precedents to govern future cases."). The supreme court has not only

cautioned us repeatedly about issuing advisory opinions on issues not essential to the case but more importantly has warned us against invalidating statutes when it is not necessary to do so. See *In re E.H.*, 224 Ill. 2d 172, 178-81 (2006). The admonition applies equally well to invalidating administrative rules, which "have the force and effect of law and, like statutes, are presumed valid." *People v. Selby*, 298 Ill. App. 3d 605, 611 (1998). Yet not only has the majority chosen to invalidate DOAH's rules allowing for nonattorney representation when it was not necessary to do so in order to resolve this case, it has couched its holding in language that appears to invalidate all other similar rules used by other administrative agencies. I cannot join in such a broad and unnecessary holding, and I express no view on the merits of the issue because I do not believe it should be reached in this case.

¶ 49    My second point of disagreement is the method that the majority uses to reach its conclusion that corporations cannot be represented in administrative proceedings by nonattorneys. The majority has chosen to reject our holdings in *Sudzus* and *Grafner*, which upheld administrative rules that allowed nonattorneys to appear on behalf of parties at administrative hearings. See *supra* ¶ 16. I do not express any opinion on whether *Sudzus* and *Grafner* were rightly or wrongly decided or even apply to this case, given that I do not think the issue should even be reached. But having reached the issue, the majority chooses to reject this court's own precedent in favor of an advisory opinion by the ISBA. While there is ample precedent for giving weight to the opinions of an administrative agency on legal questions that fall within its purview (see, *e.g.*, *Provena Convenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 387 n.9 (2010)), I am aware of no case that affords similar deference to the advisory opinions of a nongovernmental body such as the ISBA. Indeed, the ISBA, while venerable, is merely a voluntary professional association that has no authority over the regulation of the practice of law in this state. I fail to see how an unreviewable advisory opinion of such a body can have any persuasive effect when this court has issued not one but two opinions on the same subject.

¶ 50    I also disagree with the majority's reliance on *Downtown Disposal*, which the majority contends stands for the proposition that a nonattorney cannot represent a corporation in legal proceedings. See *supra* ¶ 17. *Downtown Disposal* does not, however, speak to the issue of nonattorney representation in administrative proceedings, but instead dealt with that issue in the context of *judicial* proceedings. In *Downtown Disposal*, the supreme court determined that the act of filing a complaint for administrative review in the circuit court constituted the unauthorized practice of law. See *Downtown Disposal Services*, 2012 IL 112040, ¶¶ 12-20. The supreme court did not consider whether a similar action by a nonattorney in administrative proceedings constituted the unauthorized practice of law, and so the case is inapposite here. Even so, the supreme court also noted that the effect of the unauthorized practice of law depends on the facts of each case, holding that there is no *per se* nullity rule. See *id.* ¶ 31. Yet the majority does not take this fact-specific approach here, instead considering the broad legal question of whether nonattorneys in general should ever be allowed to represent corporations in administrative hearings. In my view, even if it were necessary to reach the issue of the effect of nonattorney representation, *Downtown Disposal Services* requires that our analysis be limited to the specific facts of the case itself. *Cf. id.* ¶¶ 32-35 (examining the circumstances of the case and finding that the nonattorney representation did not render the complaint a nullity).

¶ 51    My final point of disagreement is about further review of this case. Along with its petition for rehearing, the City asked us to issue a certificate of importance to the supreme court under Illinois Supreme Court Rule 316 (Ill. S. Ct. R. 316 (eff. Dec. 6, 2006)). I must respectfully dissent from the decision to deny the City's motion. While "the appellate court's power to certify a case to the supreme court should be used very sparingly" (*John Crane, Inc. v. Admiral Insurance Co.*, 2013 IL App (1st) 093240-B, ¶ 73), I believe that this case is one of those rare occasions that merit issuance of a certificate. There are no specific criteria for when a certificate should be issued, but this case warrants the supreme court's attention for two reasons. First, the majority holding invalidates not only DOAH's own rule allowing for nonattorney representation during administrative hearings but also implicitly invalidates similar rules used by administrative bodies throughout the state. Indeed, the implications of the majority holding are serious enough that the Attorney General took the highly unusual step of filing a brief as *amicus curiae* in support of the City's petition for rehearing. Second, the majority opinion affects the definition of the practice of law in this state, which we all agree is a subject that only the supreme court has authority over. Taken together, I believe these two points are important enough to warrant designating this case for the supreme court's immediate attention by issuing a certificate of importance. While the supreme court may choose to hear the case anyway through an ordinary petition for leave to appeal, certification will allow the court to resolve this important issue in the speediest possible manner. I would therefore grant the City's request and issue the certificate.