# Illinois Official Reports

## Supreme Court

> ### *Stone Street Partners, LLC v. City of Chicago Department of Administrative Hearings*, 2017 IL 117720

| | |
|---|---|
| Caption in Supreme Court: | STONE STREET PARTNERS, LLC, Appellee and Cross-Appellant, v. THE CITY OF CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS *et al.*, Appellants and Cross-Appellees. |
| Docket No. | 117720 |
| Filed<br>Rehearing denied | February 17, 2017<br>May 22, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Mark Ballard, Judge, presiding. |
| Judgment | Appellate court affirmed.<br>Cause remanded. |
| Counsel on Appeal | Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Jonathon D. Byrer, Assistant Corporation Counsel, of counsel), for appellants.<br><br>Mitchell B. Katten and Joshua R. Diller, of Katten & Temple LLP, and Richard F. Linden, both of Chicago, for appellee. |

Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and John P. Schmidt, Assistant Attorney General, of Chicago, of counsel), *amicus curiae*.

Douglas A. Darch, Michael A. Pollard, and Matthew M. Brown, of Baker & McKenzie LLP, of Chicago, for *amici curiae* the Society for Human Resource Management *et al.*

Carla F. Garfinkle, of Northbrook, and Edwin E. Huddleson, of Washington, D.C., for *amicus curiae* American Automotive Leasing Association.

Justices CHIEF JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Justices Thomas, Kilbride, and Garman concurred in the judgment and opinion.

Justice Freeman dissented, with opinion, joined by Justices Burke and Theis.

Justices Freeman, Burke, and Theis dissented upon denial of rehearing.

## OPINION

¶ 1 Stone Street Partners, LLC (Stone Street), brought this action in the circuit court of Cook County to obtain administrative review and declaratory and other relief, including an award of damages, after discovering that a judgment had been recorded against one of its properties for failure to pay $1050 in fines and costs imposed by the city of Chicago's department of administrative hearings (the Department) for violation of various provisions of the city's building code more than a decade earlier. Stone Street's complaint, which named as defendants the city of Chicago, the Department and its director, and the city of Chicago's department of buildings and the commissioner of that department (collectively the City), asserted that the original administrative proceedings were a nullity and could not serve as the basis for the judgment subsequently recorded against its property because, *inter alia*, it had not been given the requisite notice and therefore had no opportunity to contest the violations alleged by the City before judgment was entered against it.

¶ 2 Following a motion filed by the City pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)), the circuit court rejected Stone Street's cause of action in its entirety. The appellate court, with one justice partially dissenting, subsequently affirmed in part, reversed in part, and remanded for further proceedings. 2014 IL App (1st) 123654. We allowed the City's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013).

For the reasons that follow, the judgment of the appellate court is affirmed, and the cause is remanded to the circuit court for further proceedings.

¶ 3                                               BACKGROUND

¶ 4        The standards governing this appeal are well established. A motion to dismiss under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)) admits the legal sufficiency of the complaint but asserts that some affirmative matter defeats the plaintiff's claim. When reviewing whether a motion to dismiss under section 2-619 should have been granted, we may consider all facts presented in the pleadings, affidavits, and depositions found in the record. *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 396 (2009). All well-pleaded facts along with all reasonable inferences that can be drawn from those facts are deemed admitted, and all pleadings and supporting documents must be interpreted in the light most favorable to the nonmoving party. *Bjork v. O'Meara*, 2013 IL 114044, ¶ 21. Because section 2-619 motions present a question of law, we give no deference to the determinations by the lower courts. Our review is *de novo*. *Doe A.*, 234 Ill. 2d at 396.

¶ 5        The record before us, when viewed according to the foregoing principles, establishes the following. Stone Street is a limited liability company created in 1998 and duly registered with the Illinois Secretary of State. Its registered agent is and has always been William G. Daluga, Jr. Mr. Daluga's address is 200 W. Adams Street, Suite 2500, Chicago, Illinois 60606. According to state records, Stone Street's principal office is located at 1343 N. Wells Street, ground level, Chicago, Illinois 60610. These addresses have been on file with the Secretary of State since 1998 and have never changed.

¶ 6        Stone Street owns real estate located at 44-46 E. Superior Street, Chicago, Illinois 60611.[1] On March 19, 2009, the City recorded a judgment against that property. The judgment so recorded had actually been entered 10 years earlier, on September 9, 1999, following a hearing on that same date, by an administrative law officer in the City's department of administrative hearings. The judgment was in the amount of $1050 and was based on the administrative officer's determination that "Stone Street Partners" was liable for violation of various provisions of the City's building code. One thousand dollars of this sum was a fine. Fifty dollars was for costs.

¶ 7        There is no evidence that Stone Street or anyone with authority to act on behalf of Stone Street had ever been notified of the building code violations that resulted in the 1999 judgment or the judgment itself, at any time prior to 2009. The "communication transmittal form" on which the building inspector had listed the violations to be addressed at the September 9, 1999, hearing showed that during the inspection, the owner was not present. Moreover, the document incorrectly identified the property's owner as "1st Real Estate and Development."

¶ 8        Issuance of the foregoing document apparently resulted after code violations discovered by City inspectors in the previous months remained uncorrected. However, neither that document nor the prior reports of violations were mailed to Stone Street's office or the office of its registered agent, Mr. Daluga. The City destroyed most of the records regarding this matter, but the surviving materials indicate that the notices were actually mailed to Supera Properties,

---

[1]The record shows that these are actually two separate buildings, 44 E. Superior Street and 46 E. Superior Street.

2001 N. Halsted Street, No. 301, Chicago, IL, 60614. Supera Properties was neither an agent nor a representative of Stone Street. Copies were apparently also sent to this address: Stone Street Partners, 44 E. Superior Street, Chicago, IL 60614. Forty-four E. Superior Street, however, was not Stone Street's principal place of business, and Stone Street Partners is not the company's name. The company is registered as Stone Street Partners, LLC, and its address was on N. Wells Street. The street name and number listed on the notice were actually those of the property where the violations were alleged to be, but even at that, the address was inaccurate. The zip code listed, 60614, was incorrect. The property owned by Stone Street is located in the 60611 zip code area.

¶ 9    While notice was never given to or received by Stone Street or its agents or representatives, a person named Keith Johnson entered a written appearance in the administrative proceeding that culminated in the fine against Stone Street. Johnson represented that he was there on behalf of Stone Street, but the address and phone number he gave corresponded to those of a business called "First Real Estate," not Stone Street, and he left blank the section of the appearance form in which he was asked to state under oath that he was either the respondent/owner, lessee, attorney, or authorized agent/representative of Stone Street.[2] Although Johnson died before this litigation arose and therefore could not be questioned, the reason he refrained from selecting any of the options seems apparent. He could not do otherwise without committing perjury. Johnson was not employed by Stone Street and had no affiliation of any kind with the company. He did not even live in the subject property. So far as can be ascertained, he was merely the private caretaker for Philip Farley, the father of an attorney named Brian Farley, who was one of the members of Stone Street.

¶ 10    When Johnson was working for Philip in 1999, Philip, who is now also deceased, had suffered a stroke, was in ill health, and lacked the mental capacity to manage his own affairs. Due to his diminished mental capacity, Philip was not involved in the management or affairs of Stone Street and therefore could not have authorized Johnson to act on Stone Street's behalf.[3] Moreover, there is no evidence that Stone Street or anyone associated with Stone Street ever took any action or made any representations that would indicate to others that Johnson had any

[2]The name "First Real Estate" is similar to "1st Real Estate and Development," the entity erroneously listed by the City's inspector in his "communication transmittal form" as being the owner of the subject property. Whatever relationship Johnson had to that company is unknown, and there is no evidence in the record before us that the company, whatever its precise name, had any relationship to Stone Street.

[3]The record does contain a document signed by Philip and dated August 26, 1999, accepting a proposal from a company called Ace Electric to perform some electrical work at 44-46 E. Superior Street. Putting aside the question of Philip's competency to execute the document, nothing in the document references Stone Street, directly or indirectly. The circumstances of the transaction are unknown. It is possible that testimony from the September 9, 1999, administrative hearing or from an earlier hearing held in the case the previous month would have shed useful light on this. Unfortunately, no transcripts were made of those hearings, and the audio recordings of the hearings were destroyed by the City. Consistent with both the standards governing review of judgments granting motions under section 2-619, which we discussed earlier, and longstanding principles of evidence and trial procedure governing situations where a party has destroyed evidence (see 89 C.J.S. *Trial* § 592 (2012); *Miller v. People*, 39 Ill. 457, 466 (1866); Illinois Pattern Jury Instructions, Civil, No. 5.01 (2011)), we infer that this missing evidence would not have supported the City's position.

authority to act on Stone Street's behalf with respect to this or any other matter. To the contrary, Brian Farley, Philip's son, stated unequivocally that he served as attorney for the company at the time and that if the company had been sent proper notice, he would have been the one to appear on the company's behalf. According to Brian's uncontested affidavit, Johnson had no authority to represent Stone Street, and the company "would not have sent a caretaker to defend the charges had it been properly provided with notice of this case."

¶ 11 After Stone Street learned that a judgment had been recorded against the company's property in 2009 based on the 1999 administrative judgment imposing the $1050 in fines and costs on "Stone Street Partners," Brian Farley wrote to the City's counsel in his capacity as Stone Street's attorney to request that the judgment be released and that title to the property be cleared. When that effort proved unsuccessful, Stone Street sought relief from the City's department of administrative hearings. Specifically, the company asked the Department to vacate and set aside the September 9, 1999, judgment on the grounds that the company had never received notice of the charges or of any orders entered in the case. The company further contended that the proceedings leading to the 1999 administrative judgment were fatally flawed because regardless of Johnson's relationship (or lack thereof) with Stone Street, he was not a lawyer and could not appear for the company without violating the prohibition against the unauthorized practice of law.

¶ 12 By order dated December 9, 2011, the administrative law officer for the Department "struck" Stone Street's request for relief with prejudice on the grounds that the Department no longer had jurisdiction to set aside the September 9, 1999, judgment. Thus rebuffed again, Stone Street turned next to the circuit court of Cook County. There, Stone Street filed the complaint that gave rise to this appeal.

¶ 13 Stone Street's complaint contained four counts. Count I sought administrative review of the December 9, 2011, decision by the Department striking with prejudice its motion to vacate and set aside the 1999 administrative judgment. That count, which was predicated on the provisions of the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2012)), asserted, among other things, (1) that there was no legal or factual support for the Department's decision and (2) that the Department erred in failing to consider, on the merits, its claims that the September 9, 1999, judgment was fatally flawed because Stone Street had not been given the requisite notice and opportunity to be heard in violation of the state and federal constitutions and because the judgment resulted from proceedings involving the unauthorized practice of law.

¶ 14 Count II of Stone Street's complaint requested a declaratory judgment that the judgment recorded against its property in 2009 is null and void because the September 9, 1999, administrative judgment on which it is based (1) had expired, was not revived, and therefore was unenforceable under sections 12-101, 12-108, and 12-183 of the Code of Civil Procedure (735 ILCS 5/12-101, 12-108, 12-183 (West 2012)); (2) was the product of proceedings involving the unauthorized practice of law; and (3) was entered against a nonexistent entity, namely, Stone Street Partners rather than Stone Street Partners, LLC. Stone Street also complained that, in the 2011 administrative proceedings rejecting its efforts to vacate and set aside the 1999 judgment, the City was improperly represented by a private law firm rather than its own corporation counsel. Stone Street further contended that the City's unlawful actions

placed a cloud on its title to the subject property and that it should receive monetary compensation, including an award of attorney fees, for the resulting damages it sustained.

¶ 15    Count III of Stone Street's complaint incorporated by reference the previous allegations but sought recovery for slander of title based on the additional charge that, in recording the September 9, 1999, administrative judgment and then refusing to take the necessary corrective action after being asked to do so by Brian Farley, the City had acted maliciously. Count IV claimed that the September 9, 1999, order imposing the $1050 in fines was void and unenforceable because the administrative complaint culminating in that order was neither drafted nor prosecuted by a licensed attorney and, in pursuing the complaint, the City was therefore engaged in the unauthorized practice of law.

¶ 16    The City moved to dismiss Stone Street's cause of action in its entirety pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)). Following a hearing, the circuit court entered an order granting the City's motion as to the claims asserted in counts II, III, and IV of the complaint. With respect to count I, which sought administrative review, the court affirmed the December 9, 2011, judgment by the Department striking, for lack of jurisdiction, Stone Street's challenge to the September 9, 1999, judgment imposing $1050 in fines and costs.

¶ 17    Stone Street appealed. As noted at the outset of this opinion, the appellate court affirmed in part, reversed in part, and remanded for further proceedings. 2014 IL App (1st) 123654. After reviewing the record and the applicable law, the appellate court concluded that Stone Street had not, in fact, been afforded the necessary notice and opportunity to be heard prior to entry of the September 9, 1999, judgment against it. *Id.* ¶ 13. It further opined that Stone Street cannot be deemed to have waived its objection to proper notice based on Johnson's participation at the September 9 hearing. As grounds for this conclusion, the appellate court relied primarily on the fact that Johnson was not a licensed attorney. Citing a range of authorities, including this court's recent decision in *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, the appellate court held that nonattorneys cannot represent corporations in administrative hearings, particularly hearings of the type at issue here, "which involve testimony from sworn witnesses, interpretation of laws and ordinances, and can result in the imposition of punitive fines ***." 2014 IL App (1st) 123654, ¶ 16. It further noted, however, that even if Johnson had been a licensed attorney, the result would have been the same because the record affirmatively showed that Johnson lacked authority to represent Stone Street in any capacity. *Id.* ¶ 21.

¶ 18    Once it reached this conclusion, the appellate court next considered how the lack of notice affected the viability of the various counts asserted by Stone Street in its complaint. No discussion was needed regarding count IV, which alleged unauthorized practice of law by the City, because Stone Street had decided not to pursue its challenge to the dismissal of that count.

¶ 19    With respect to count I, the court opined that notwithstanding the fatal defect in the September 9, 1999, proceedings and judgment, the Department had no authority to revisit that judgment and its 2011 order striking Stone Street's motion to vacate was therefore properly upheld on review by the circuit court. *Id.* ¶ 25. The appellate court also concluded that the circuit court had correctly dismissed count III of Stone Street's complaint, which alleged slander of title. The appellate court held that this claim was barred by section 2-107 of the

Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/2-107 (West 2012)), which immunizes local public entities from liability for injury caused by any action of its employees that is libelous or slanderous. 2014 IL App (1st) 123654, ¶ 31.

¶ 20 The appellate court reached a different result with respect to count II, which sought declaratory and other relief. It held that Stone Street could not recover money damages under that count to the extent that such damages were premised on slander of title principles. As noted, the appellate court believed that the City was cloaked in statutory immunity with respect to such claims. *Id.* ¶ 28. At the same time, however, the appellate court concluded that because Stone Street's complaint and related materials supported its claim that the 1999 administrative judgment was void because the requisite notice had not been given, Stone Street should be permitted to pursue equitable relief under count II in the circuit court. It therefore reversed in part as to that count and remanded to the circuit court for further proceedings.

¶ 21 One justice concurred in part and dissented in part. In her view, the circuit court's dismissal of count II should have been affirmed in its entirety. *Id.* ¶¶ 43-45 (Connors, J., concurring in part and dissenting in part). She also disagreed with the majority's discussions regarding the unauthorized practice of law by Johnson and the City. In addition, contrary to a view expressed by the majority, the partially dissenting justice believed that this case warranted issuance of a certificate of importance pursuant to Illinois Supreme Court Rule 316 (eff. Dec. 6, 2006). 2014 IL App (1st) 123654, ¶ 51 (Connors, J., concurring in part and dissenting in part).

¶ 22 The City petitioned our court for leave to appeal, which we allowed. Ill. S. Ct. R. 315 (eff. July 1, 2013). We have also permitted various parties to file friend of the court briefs under Illinois Supreme Court Rule 345 (eff. Sept. 20, 2010). The Illinois State Bar Association has filed a brief supporting Stone Street. The Attorney General of Illinois, the American Automotive Association, and a group including the Society for Human Resource Management have filed three separate briefs supporting the City. In addition, after the case was taken under advisement, we ordered supplemental briefing on the question of whether the notice of the building code violations and the 1999 administrative hearing was "adequate to acquire personal jurisdiction over Stone Street Partners, LLC, and satisfy due process." That briefing has now been completed, and the matter is ready for a decision by this court.

¶ 23                                                    ANALYSIS

¶ 24 The sole issue presented by the City's appeal is whether the appellate court erred in concluding that count II of Stone Street's should not have been dismissed in its entirety and that Stone Street should, instead, be permitted to proceed on the portions of count II that sought declaratory relief and elimination of the cloud on Stone Street's title to its property on 44-46 E. Superior Street. As we have discussed, the basis for the appellate court's ruling was that Stone Street had never been properly served with notice of the proceedings that resulted in the administrative judgment against it and that Johnson's appearance at the September 9, 1999, administrative hearing could not cure that defect. In assailing the appellate court's decision, the City focuses on the court's holding that Johnson's appearance could not operate as a waiver of the City's failure to provide Stone Street with proper notice because he was a layperson and his participation in the proceedings violated the prohibition against the unauthorized practice of law.

- 7 -

¶ 25     The City urges us to reject that holding because, in its view, administrative proceedings conducted by the Department do not require specialized legal skill and training and the rationale for the general rule that corporations must be represented by attorneys in legal proceedings is inapplicable to administrative proceedings such as those conducted by the Department. The City argues, in the alternative, that even if the representation of corporations in proceedings before the Department does involve the practice of law and Johnson's conduct here would otherwise run afoul of the prohibition against the unauthorized practice of law, this court should invoke its inherent authority to regulate the practice of law and hold that lay representation of corporations in administrative proceedings of the type conducted by the Department is permissible. If we are not disposed to take that view and instead agree with the appellate court that lay representation of corporations in proceedings before the Department is prohibited, the City asks that we give that holding only prospective effect.

¶ 26     The City is entirely correct that Johnson's status is central to the viability of the claims asserted by Stone Street in count II of its complaint. But for Johnson's presence at the September 9, 1999, hearing, there would be no basis for holding that Stone Street had been given adequate notice and an opportunity to be heard with respect to the building code violations that were the predicate for the $1050 judgment recorded against its property. As we have indicated, the record is devoid of evidence that the City undertook the measures necessary to notify Stone Street of those violations in the manner and within the time required by law. Without such notice, the only way the subsequent proceedings could be given effect is if the lack of notice could be deemed to have been waived by someone with authority to waive it, and the only person who could possibly have effectuated such a waiver in this case is Johnson.

¶ 27     While Johnson's role in the case is therefore critical, we disagree with the City that the viability of Stone Street's cause of action turns on whether laypersons may represent corporations in administrative proceedings before the Department without violating the prohibitions against the unauthorized practice of law. In our view, resolving the issues of whether Johnson's representation violated the ban on the practice of law by lay persons and, if so, whether such conduct should nevertheless be permitted in administrative proceedings before the Department is unnecessary for resolution of this case. The reason these issues need not be addressed was actually identified by the appellate court majority itself in its opinion: Johnson did not represent Stone Street in *any* capacity.[4]

¶ 28     A defendant does not waive objection to a tribunal's exercise of jurisdiction based on the participation of a person who has not been authorized by the defendant, expressly or impliedly, to appear on its behalf, and there is no proof of ratification. That is so even if the purported representative is a licensed attorney. When the facts show a lack of authorization, the representative's acts are a nullity against the party for whom the appearance was entered. 2014

---

[4]Because resolution of the unauthorized practice of law issue is not necessary to the disposition of the case, any statements or holdings by the appellate court with respect to whether laypersons may represent corporations in proceedings before the Department without violating the prohibition against the unauthorized practice of law were wholly advisory, as would be any statements made by this court on the issue. We therefore vacate those portions of the appellate court's opinion which addressed that issue. See *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 157 (2002); *Italia Foods, Inc. v. Sun Tours, Inc.*, 2011 IL 110350, ¶¶ 41-42.

IL App (1st) 123654, ¶ 21 (citing *Gray v. First National Bank of Chicago*, 388 Ill. 124, 129 (1944)).

¶ 29    That is precisely the situation we have in this case. Not only is there no evidence—none—that Stone Street had authorized Johnson to represent it at the administrative hearing, there is no evidence that he had any relationship with Stone Street at all. To be sure, Johnson did fill out a form supplied by the Department on which he claimed to appear on behalf of the corporation. As we have previously noted, however, the Department's form required the person completing it to specify, under oath, his relationship to the person or entity on whose behalf he purported to appear. Four choices were given: representative/owner, lessee, attorney, or authorized agent/representative. Mr. Johnson did not check *any* of these four options.

¶ 30    The form is straightforward and unambiguous. If Mr. Johnson left the four spaces blank because he did not understand what they meant, his capacity to understand the rest of the proceedings would be open to serious question. Even if one agreed with the City that the proceedings were so rudimentary that no "trained legal mind" was required, the bar for adequate representation is not so low that we will deem it satisfied by someone who cannot make a check mark on the simplest of forms.

¶ 31    While Johnson is now deceased and cannot be questioned regarding his conduct, it seems evident that the reason he left the form incomplete is that checking any of the choices would have opened him to charges of perjury. The evidence in the record clearly shows that Johnson was not, in fact, the respondent/owner of the subject property; he was not the lessee—the address he gave for himself was down the street from the subject property; he was not a lawyer at all, much less a lawyer for Stone Street; and he was not the corporation's agent/representative. In fact, he did not work for Stone Street in any capacity. His only connection with the corporation was through Philip Farley, the now deceased elderly father of Brian Farley, the LLC's lawyer and one of its members. The senior Mr. Farley was in ill-health, having suffered from a stroke, and he was not involved in the management or affairs of Stone Street due to his diminished mental capacity. Mr. Farley lacked sufficient mental capacity to manage even his own affairs. That is where Mr. Johnson came in. He served as Mr. Farley's personal caretaker. To be clear, he was not the caretaker of the building. He was only the caretaker for Mr. Farley.

¶ 32    Why Mr. Johnson, a personal caretaker, would take it upon himself to appear at the September 1999 hearing on building code violations is unknown. Whatever responsibilities Johnson had with respect to the personal care of Mr. Farley, there is nothing in the record that would support a finding that he had any actual authority to act on behalf of Stone Street, the property's owner.

¶ 33    Nor is there any basis for concluding that Johnson possessed even apparent authority to bind Stone Street. Apparent authority arises where a principal creates, through words or conduct, the reasonable impression that the putative agent has been granted authority to perform certain acts. *State Security Insurance Co. v. Burgos*, 145 Ill. 2d 423, 431-32 (1991). The idea behind the doctrine is that if the principal created the appearance of authority, it should be estopped from denying that authority where doing so would operate to the detriment of a third party. *Id.* at 432; *O'Banner v. McDonald's Corp.*, 173 Ill. 2d 208, 213 (1996). Nothing like that occurred here. At no time did Stone Street ever take any action, overtly or

even through acquiescence, that could reasonably have been construed as conferring authority on Johnson to act on its behalf at the hearing or for any other purpose. And while a principal can ratify and thereby retroactively authorize an agent's action by accepting the benefits of that action (*Christopher B. Burke Engineering, Ltd. v. Heritage Bank of Central Illinois*, 2015 IL 118955, ¶ 24), no such thing happened here either.

¶ 34    In the context of administrative hearings, due process of law specifically requires a definite charge, adequate notice, and a full and impartial hearing. *Ellison v. Illinois Racing Board*, 377 Ill. App. 3d 433, 444-45 (2007). These threshold requirements have been incorporated into the Illinois Municipal Code (65 ILCS 5/1-1-1 *et seq.* (West 2012)), which provides: "[p]arties shall be given notice of an adjudicatory hearing which includes the type and nature of the code violation to be adjudicated, the date and location of the adjudicatory hearing, the legal authority and jurisdiction under which the hearing is to be held, and the penalties for failure to appear at the hearing." 65 ILCS 5/1-2.1-5(b) (West 2012). The Chicago Municipal Code likewise provides that "[b]efore any administrative adjudication proceeding may be conducted, the parties shall be afforded notice in compliance with this section" (Chicago Municipal Code § 2-14-074(a) (amended Apr. 29, 1998)) and that the issuer of the notice specify

> "his or her name and department; where known, the name and address of the person or entity charged with the violation; the date, time and place of the violation; and the section of the code or departmental rule or regulation which was allegedly violated; and shall certify the correctness of the specified information by signing his or her name to the notice. A notice of hearing shall also include the date, time and location of the hearing and the penalties for failure to appear at the hearing." Chicago Municipal Code § 2-14-074(b) (amended Apr. 29, 1998).

¶ 35    To reiterate what we have already said, there is no dispute that Stone Street received no such notice with respect to the building code violations that gave rise to this litigation. The notice issued by the City was never served on the corporation's registered agent or sent to the corporation's principal place of business as required by section 2-14-074(c) of the Chicago Municipal Code (Chicago Municipal Code § 2-14-074(c) (amended Apr. 29, 1998)). As the appellate court correctly recognized (2014 IL App (1st) 123654, ¶ 14), the only possible way this fundamental lapse could be cured is if the lack of proper notice was subsequently waived by Johnson's appearance at and participation in the hearing. As we have already explained, however, no such waiver can be imputed to Stone Street. Because it is manifest from the record before us that Johnson's actions were neither authorized nor ratified by Stone Street, anything he did or failed to do at the hearing did not cure the City's failure to properly serve the corporation. Issues regarding the unauthorized practice of law are immaterial. Even if Johnson had been an attorney, his lack of actual or apparent authority to act on Stone Street's behalf and the absence of after-the-fact ratification of his conduct by Stone Street precludes any claim by the City that Johnson's conduct operated as a waiver by Stone Street of the company's objections to the City's failure to notify it of the violations or the hearing thereon as required by law.

¶ 36    The notice requirements were jurisdictional prerequisites that the Department was required to follow in order for it to have authority to hear the case and adjudicate the charges against Stone Street. *In re Abandonment of Wells Located in Illinois*, 343 Ill. App. 3d 303, 307 (2003);

see *Newkirk v. Bigard*, 109 Ill. 2d 28, 36 (1985). Because Stone Street was never properly served with notice and because Johnson had no authority to appear on the company's behalf, the Department failed to acquire personal jurisdiction over it. The Department's 1999 judgment imposing fines on Stone Street was therefore void *ab initio* and could be attacked at any time, either directly or collaterally. See *In re Abandonment of Wells Located in Illinois*, 343 Ill. App. 3d at 307; *City of Chicago v. Fair Employment Practices Comm'n*, 65 Ill. 2d 108, 112-13 (1976); *Siddens v. Industrial Comm'n*, 304 Ill. App. 3d 506, 511 (1999); *People v. Smith*, 275 Ill. App. 3d 844, 850-51 (1995). Accordingly, regardless of whether the Department could itself have set aside the void judgment in the context of the 2011 administrative proceeding, the judgment could have been set aside by the circuit court as Stone Street requested. The appellate court was therefore correct when it held that Stone Street should have been permitted to pursue its claims to quiet title and obtain declaratory relief to invalidate all proceedings premised on the void 1999 judgment and that the portions of count II seeking such relief should therefore not have been dismissed by the circuit court.

¶ 37    Stone Street has cross-appealed, arguing that the appellate court's judgment should be affirmed for the additional reason that the 2009 judgment recorded against its property was null and void because the 1999 judgment on which it was based had expired by the time the City attempted to enforce it. Because we have already determined that the 1999 judgment was void and unenforceable for lack of notice, resolution of Stone Street's additional basis for challenging that judgment would not alter the outcome of this case. Whether or not Stone Street's argument is meritorious, the company may, on remand, pursue its claims to quiet title and obtain declaratory relief as set forth in count II of its complaint. The issue raised by Stone Street in its cross-appeal is therefore moot. See *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10.

¶ 38                                        CONCLUSION

¶ 39    For the foregoing reasons, the judgment of the appellate court is affirmed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 40    Appellate court affirmed.

¶ 41    Cause remanded.

¶ 42    JUSTICE FREEMAN, dissenting:

¶ 43    We granted the City's petition for leave to appeal in this case to address the appellate court's holding and the conflict it created regarding the representation of corporations in administrative proceedings. The majority does not address the unauthorized practice of law issue, finding it "immaterial" to the resolution of this case. *Supra* ¶ 35. I disagree. Not only does the majority not address this issue, it invalidates a final administrative order based on an incomplete and inadequate record. I cannot agree with this either. For the following reasons, I respectfully dissent.

¶ 44    The majority holds that, since the Department's notice of the building code violations to Stone Street was deficient and Johnson's appearance at the administrative hearing did not waive jurisdiction because Johnson was not authorized to represent Stone Street in any

capacity, the Department's 1999 judgment was void *ab initio* and Stone Street could pursue its claims to quiet title and obtain declaratory relief. *Supra* ¶¶ 29, 36.

¶ 45    I would hold that this court should not invalidate a final administrative order based on an incomplete and inadequate record such as the one here. Additionally, I would address the unauthorized practice of law issue and hold that the representation of a corporation at Department proceedings does not constitute the practice of law.

¶ 46    As the majority notes, personal jurisdiction, unlike subject-matter jurisdiction, can be waived. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 333 (2002); *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 308 (1986). I disagree with the majority that we are able to discern from the record here that there was no waiver of jurisdiction. Its finding is based on a record that can only be described as woefully inadequate. The majority acknowledges that the City destroyed "most" of the administrative record, yet it is willing to invalidate a final administrative order based on the incomplete record that remains.[5] The majority's conclusion is not only unwarranted but unwise. If we permit or even endorse such a practice here, the message we send to future litigants is that they can void an administrative agency's final order based on an incomplete and inadequate record. This should not be.

¶ 47    I set forth below some additional facts to explain why I believe the record is inadequate to conclusively establish that no waiver of jurisdiction occurred. In June 1999, a City building inspector found numerous building code violations at Stone Street's property at 44-46 East Superior Street in Chicago. To remedy the violations, Stone Street needed to install carbon monoxide detectors, remove garbage and debris from the rear of the building and from the ground floor rear hallway, install adequate lighting and exit signs in exit areas, recharge fire extinguishers, repair the rear door, and make arrangements to reinspect the property. The administrative law officer's order from the August 12, 1999, hearing indicated that someone appeared on Stone Street's behalf and that person claimed the violations had been corrected.[6] The property was reinspected, and the next hearing occurred on September 9, 1999. Keith Johnson appeared at that hearing, purportedly on behalf of Stone Street, and submitted two exhibits: a picture of a carbon monoxide detector that had been installed at the property and a copy of a contract for electrical work to be performed at the property. The contract was dated August 26, 1999, and was signed by "Phil Farley." The administrative law officer's order indicated that liability was contested and found Stone Street liable for five of the seven violations, resulting in a $1050 fine.[7]

¶ 48    On March 23, 2009, the Law Offices of Talan & Ktsanes, as special assistant corporation counsel for the City, sent a letter to Stone Street indicating that the City had recorded a lien against the property as a result of the Department's 1999 judgment. The letter was addressed to Stone Street Partners, LLC, and sent to its principal place of business at 1343 N. Wells Street in Chicago. A copy of the Department's 1999 judgment was included with the letter. An affidavit

---

[5]The administrative record was destroyed in accordance with the Local Records Act (50 ILCS 205/1 *et seq.* (West 2000)).

[6]It is unknown who appeared on behalf of Stone Street at the August hearing, and the audio recording of the hearing was destroyed with most of the record.

[7]The audio recording of the hearing was destroyed with most of the record.

from Robert Talan indicated that he recorded the lien with the Cook County recorder of deeds on March 19, 2009, and notified Stone Street in a letter dated March 23, 2009.

¶ 49 Notwithstanding the 2009 letter from the Law Offices of Talan & Ktsanes, Stone Street claimed that it learned of the Department's judgment in 2011. Stone Street then sought to invalidate the judgment, first with a motion to vacate and subsequently by filing a complaint in the circuit court of Cook County. Its motion to vacate was supported by an affidavit from Brian Farley, a member of Stone Street. The affidavit indicated, as the majority notes, that Johnson was neither an attorney nor an employee of Stone Street and was not authorized to represent Stone Street.[8] It further indicated that Johnson was a caretaker for Philip Farley and that in 1999, Philip did not have the mental capacity to manage his own affairs and was not a manager or involved in the management or affairs of Stone Street because of his diminished mental capacity.[9] Brian further averred that "[i]f Stone Street had been sent proper notice of this case, I would have appeared in 1999 on behalf of Stone Street and defended the charges" and that Stone Street "would not have sent a caretaker to defend the charges."

¶ 50 I first find problematic the fact that a hearing occurred on August 12, 1999, and the administrative law officer's order indicated that someone appeared on behalf of Stone Street and claimed the building code violations had been corrected. The majority briefly acknowledges the August hearing in a footnote but does not consider the hearing in its analysis. It only determines that Johnson's appearance at the September hearing did not waive jurisdiction. We do not know who appeared at the August hearing, what was said at the hearing, and whether that person waived jurisdiction.[10] We do know that the administrative law officer permitted someone to appear on Stone Street's behalf, and there is nothing to call into question the officer's determination that the appropriate parties were present to conduct the hearing.

¶ 51 Second, it is unknown how Johnson came to appear at the September 9, 1999, hearing and how he came to possess the exhibits he submitted at the hearing that corresponded to the building code violations. Since the audio recording of the hearing no longer exists, we do not know whether Johnson informed the administrative law officer of any purported relationship he might have had to Stone Street. I disagree with the majority's conclusion that the only reason Johnson did not check any of the boxes on the appearance form was because in doing so he would be committing perjury. We simply do not know why Johnson did not check any of the boxes or whether a discussion occurred at the hearing addressing the issue. Additionally, the contract for electrical work that was performed at the property, which was signed by "Phil Farley," raises more questions. Even Stone Street acknowledges that it does not know how Philip became aware of the building code violations. And, as the majority notes, there is a question as to Philip's competency to execute the document, if indeed he lacked the mental capacity to manage his own affairs or those of Stone Street, as Stone Street alleged.

---

[8]Johnson died in 2004.

[9]According to Stone Street, Philip died in 2009.

[10]The person who did appear may not have been Johnson, since Johnson's appearance form was dated September 9, 1999. If Johnson had already appeared at the August hearing, it would have been unnecessary to file another appearance.

¶ 52    Next, we do not know why Stone Street was unaware of the 2009 letter from the Law Offices of Talan & Ktsanes. As it was addressed to Stone Street Partners, LLC, and mailed to its principal place of business, Stone Street should have received the letter. Though this fact does not shed light on the issue of whether Stone Street waived jurisdiction, it is another unanswered question due to the incomplete record in this case.

¶ 53    Lastly, I disagree with the majority's characterization of Brian Farley's affidavit as "uncontested." *Supra* ¶ 10. Brian claimed that had Stone Street been sent proper notice of the building code violations, he would have personally appeared to defend the charges. However, as alleged by Stone Street in its class action complaint, Stone Street sent a nonattorney to defend against a building code violation for an overflowing dumpster in 2013.[11] Shortly after the appellate court's opinion in this case, Stone Street filed a class action lawsuit against the City and the Department seeking to invalidate all of the Department's judgments, including fines, penalties, and costs, which resulted from Department proceedings where nonattorneys represented corporations. Brian also claimed that Stone Street would not have sent a caretaker to defend the charges. However, we do not know from the record the scope of Johnson's caretaking duties, the extent of his relationship with Philip and the Farley family, and his knowledge about real estate matters. The majority states that it is "unknown" why Johnson "would take it upon himself" to appear at the hearing. *Supra* ¶ 32. I agree that it is unknown what led to Johnson's appearance at the hearing, but I disagree with the conclusion that Johnson must have taken it upon himself to appear. It does not seem plausible that Johnson took it upon himself to appear at an administrative hearing to defend against building code violations for a property he knew nothing about and for a corporation with which he had no association. What is unknown here is the person or persons who became aware of the building code violations at the property and what steps were taken and by whom to attempt to remedy the violations.

¶ 54    I point out the above facts to show why I find problematic the majority's conclusion that no waiver of jurisdiction occurred here. The majority's conclusion is based on an incomplete record, which requires the majority to engage in speculation, conjecture, and assumptions to arrive at its conclusion. Frankly, the minimal record we do have raises more questions than it answers. In challenging the Department's judgment, Stone Street bears the burden of establishing a lack of jurisdiction. See *Cullen v. Stevens*, 389 Ill. 35, 37-38 (1944) (in the case of a collateral attack on a judgment, all presumptions are in favor of the validity of the judgment attacked, and want of jurisdiction must appear on the face of the record). I disagree that Stone Street has met that burden based on the incomplete record here.

¶ 55    Additionally, I would address the unauthorized practice of law issue and hold that the representation of a corporation at Department proceedings does not constitute the practice of law. Further, I would find that Johnson was not engaged in the unauthorized practice of law at the Department's hearing.

¶ 56    The majority does not address the unauthorized practice of law issue. However, that issue was part of the appellate court's reasoning for invalidating the 1999 judgment. The appellate court held that Johnson did not waive jurisdiction because he was not authorized to represent

---

[11]See Class Action Complaint, ¶ 17, Stone Street Partners, LLC v. City of Chicago, No. 2014 CH 07058 (Cook Co., Apr. 24, 2014).

Stone Street and because a nonattorney could not represent a corporation at Department proceedings. The appellate court also seems to have invalidated the Department's rule that permitted parties to be represented by "an attorney or authorized representative." The unauthorized practice of law issue and the validity of the Department's rule are squarely before us, having been adjudicated by the appellate court and now having been fully briefed in this court. Not only is it appropriate for this court to address, it is advisable. As a result of the appellate court's opinion, the Department's website includes a section titled "Stone Street Corporation Notice," which advises corporations that they must be represented by an attorney.[12] Even though the majority vacates those portions of the appellate court opinion that concerned the unauthorized practice of law, the Department will still wonder whether it must require an attorney to represent a corporation. We should not pass on addressing the issue today when it is properly before us only to have to revisit it in the future. I note that this case has consumed the time of numerous attorneys for the City and Stone Street, several administrative law judges, and all three levels of this state's judicial system over a period of 17 years. I would address the issue as follows.

¶ 57     This court has the inherent power to define and regulate the practice of law in Illinois. *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, ¶ 14; *People ex rel. Chicago Bar Ass'n v. Goodman*, 366 Ill. 346, 349-50 (1937). The purpose of our rules is to safeguard the public from individuals unqualified to practice law and to ensure the integrity of our legal system. *Downtown Disposal*, 2012 IL 112040, ¶ 14. There is no mechanistic formula to define what is and is not the practice of law. *Id.* ¶ 15. The character of the acts themselves is examined to determine if the conduct constitutes the practice of law, and each case is largely controlled by its own peculiar facts. *Id.* It is immaterial whether the acts are done in an office, before a court, or before an administrative body, since the character of the act done, and not the place where it is committed, is the factor that is decisive of whether it constitutes the practice of law. *Goodman*, 366 Ill. at 357. We have said that the practice of law consists of " 'the giving of advice or rendition of any sort of service *** when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill.' " *People ex rel. Chicago Bar Ass'n v. Barasch*, 406 Ill. 253, 256 (1950) (quoting *People ex rel. Illinois Bar Ass'n v. Schafer*, 404 Ill. 45, 50 (1949)).

¶ 58     In *Downtown Disposal*, this court considered whether a corporation's president, who was not an attorney, was engaged in the unauthorized practice of law when he filed a complaint for administrative review on behalf of the corporation. The corporation maintained that the president had not engaged in the unauthorized practice of law because to file the complaint for administrative review, he had merely filled in blanks on a simple form that did not require the use of any legal expertise. Before rejecting this argument, we noted the general rule that a corporation must be represented by counsel in legal proceedings. *Downtown Disposal*, 2012 IL 112040, ¶ 17. The rule stems from the fact that a corporation is an artificial entity that must always act through agents and there may be questions as to whether a particular person is an appropriate representative. *Id.* We further noted that since the interests of the corporate officers and those of the corporation may not always be the same, requiring an attorney to represent a

<hr>

[12] See City of Chicago, Stone Street Corporation Notice, https://www.cityofchicago.org/ city/en/depts/ah/supp_info/Stone_Street_Corporation_Notice.html (last visited Feb. 14, 2017).

corporation in legal proceedings mitigates this problem. *Id.* In concluding that the corporation's president had engaged in the unauthorized practice of law, we reasoned that:

> "A complaint for administrative review is essential to preserve one's right to appeal an administrative decision and invokes the appellate review mechanism. The filing of the complaint affects the substantial legal rights of the party seeking administrative review, in this case, Downtown Disposal. As such, only an individual representing the corporation itself can ascertain whether it is best for a corporation to pursue review of an administrative decision and invoke the appellate mechanism." *Id.* ¶ 18.

¶ 59 To determine whether a corporation must be represented by an attorney at administrative proceedings before the Department, we look to the character of the acts involved in the representation and whether those acts require the use of any degree of legal skill or knowledge. The Department is a municipal office created by chapter 2-14 of the Chicago Municipal Code (Chicago Municipal Code § 2-14-010 *et seq.* (added July 10, 1996)). It is authorized to conduct administrative adjudication proceedings for departments and agencies of the city and for other units of government acting pursuant to intergovernmental agreements with the city. Chicago Municipal Code § 2-14-010. The Department is extensive and currently maintains four divisions: the buildings hearings division, the environmental safety and consumer affairs hearings division, the municipal hearings division, and the vehicle hearings division. City of Chicago Department of Administrative Hearings R. 1.1 (amended Nov. 8, 2011).[13] The director of the Department is charged with adopting the rules and regulations that govern proceedings at the Department. City of Chicago Department of Administrative Hearings Rs. 1.2-1.4. These rules and regulations differ greatly from the rules that govern proceedings in the circuit courts. Most notably, the Illinois Administrative Procedure Act, the Illinois Code of Criminal Procedure, and the Illinois Code of Civil Procedure do not apply to Department proceedings. City of Chicago Department of Administrative Hearings R. 1.7 (citing *City of Chicago v. Joyce*, 38 Ill. 2d 368, 373 (1967), *County of Macon v. Board of Education of Decatur School District No. 61*, 165 Ill. App. 3d 1 (1987), and *Desai v. Metropolitan Sanitary District of Greater Chicago*, 125 Ill. App. 3d 1031, 1033 (1984)). There are other significant differences as well. Discovery is not permitted except by leave of an administrative law officer. City of Chicago Department of Administrative Hearings R. 6.3 (amended Nov. 8, 2011). A subpoena may only be issued by an administrative law officer. City of Chicago Department of Administrative Hearings R. 6.4 (amended Nov. 8, 2011). A continuance may be granted only upon a finding of good cause. City of Chicago Department of Administrative Hearings R. 6.5. Prehearing motions are limited to motions for leave to request discovery, subpoenas, and continuances. City of Chicago Department of Administrative Hearings R. 6.2 (amended Nov. 8, 2011). Posthearing motions are limited to seeking enforcement of an administrative law officer's order (Chicago Municipal Code § 2-14-103 (added Apr. 29, 1998)), setting aside a default order (Chicago Municipal Code § 2-14-108 (added Apr. 29, 1998)), obtaining relief from a final order of liability entered in error (Chicago Municipal Code § 2-14-109 (added Apr. 29, 1998)), and obtaining review of fines of $10,000 or more (Chicago Municipal Code § 2-14-195 (amended Nov. 8, 2012)). City of Chicago Department of Administrative Hearings R. 11.1. The "formal" and "technical" rules of evidence do not apply,

---

[13] See https://cityofchicago.org/content/dam/city/depts/dol/rulesandregs/DOAHProceduralRules.pdf (last visited Feb. 14, 2017).

and hearsay evidence may be admitted if it is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs. City of Chicago Department of Administrative Hearings R. 8.5. An administrative law officer may ask questions of the parties and witnesses, if necessary, to ensure the clarity and completeness of the testimony and the record. City of Chicago Department of Administrative Hearings R. 8.6 (amended Nov. 8, 2011). Further, certain violations of the Chicago Municipal Code may be adjudicated by mail rather than at a hearing. City of Chicago Department of Administrative Hearings R. 9.6 (amended Oct. 29, 2013).

¶ 60    In fact, the Department's rules and regulations are more akin to the rules that apply to small claims proceedings in the circuit court, which are governed by Illinois Supreme Court Rules 281 through 288. Small claims actions are commenced in the circuit court with the filing of a "short and simple complaint." Ill. S. Ct. R. 282(a) (eff. July 1, 1997). Although a corporation may not appear as claimant, subrogee, or counterclaimant unless represented by counsel, a corporation may appear as a defendant through any officer, director, manager, department manager, or supervisor of the corporation. Ill. S. Ct. R. 282(b) (eff. July 1, 1997). The rule broadly defines "officer" as the president, vice president, registered agent, or other person vested with the responsibility of managing the affairs of the corporation. *Id.* Small claims actions can be tried by a jury with only 6 jurors, and no discovery is permissible except by leave of court. Ill. S. Ct. Rs. 285 (eff. Jan. 1, 1964), 287(a) (eff. Aug. 1, 1992). No motions other than those as provided for in sections 2-619 and 2-1001 of the Code of Civil Procedure are permitted without prior leave of court. Ill. S. Ct. R. 287(b) (eff. Aug. 1, 1992). The court may, on its own motion or on motion of any party, adjudicate the dispute at an informal hearing. At such a hearing, all relevant evidence is admissible, and the court may relax the rules of procedure and the rules of evidence. Additionally, the court may call any person present at the hearing to testify and may conduct or participate in direct and cross-examination of any witness or party. Ill. S. Ct. R. 286 (eff. Aug. 1, 1992).

¶ 61    Considering the character of the acts involved in the representation of a corporation at Department proceedings and whether those acts require the use of legal skill or knowledge, I would find that such representation does not constitute the practice of law. As noted above, the practice of law consists of the giving of advice or rendering of a service when doing so requires the use of any degree of legal knowledge or skill. See *Barasch*, 406 Ill. at 256. The character of the acts involved in proceedings before the Department does not require the use of legal knowledge or skill. When a person appears at Department proceedings, that person need not have any knowledge of procedural or evidentiary rules, and the Department's administrative law officer can ask questions of the parties and witnesses to ensure the clarity and completeness of the testimony and the record. A person need only know factual information relevant to the ordinance violation at issue. Municipal ordinance violations do not involve the interpretation of complex legal concepts or terminology and are easily understood by laypersons. For example, it does not require a "trained legal mind" to comprehend and defend against the building code violations at issue here (failure to install carbon monoxide detectors, remove garbage and debris from the building, install lighting and exit signs in exit areas, recharge fire extinguishers, and repair the rear door). *Cf. Goodman*, 366 Ill. at 355-56 (interpreting the Workers' Compensation Act (now codified at 820 ILCS 305/1 *et seq.* (West 2014)) and holding that appearing before the Industrial Commission requires a high degree of legal skill and a "trained legal mind"). Appearing on behalf of a corporation before the

Department to contest such violations or to present evidence that the violations have been remedied does not constitute the practice of law.

¶ 62    When a corporation defends itself against municipal violations at Department proceedings, it is in much the same position as when it appears as a defendant in a small claims proceeding, where it can be represented by a nonattorney. As noted above, the rules that apply to small claims proceedings and the rules and regulations that apply to Department proceedings are very similar. The fact that we have authorized the representation of corporations as defendants in small claims proceedings by nonattorneys lends support to the conclusion that a corporation may be represented at Department proceedings by a nonattorney.

¶ 63    I also find *Grafner v. Department of Employment Security*, 393 Ill. App. 3d 791 (2009), and *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814 (2009), instructive. Both cases concluded that a nonattorney's representation of a corporation at an unemployment compensation hearing before the Department of Employment Security did not constitute the unauthorized practice of law. In *Grafner*, the defendant church was represented at the hearing by a nonattorney representative. The appellate court noted that the representative's participation during the hearing merely consisted of asking fact-clarifying, follow-up questions that did not require the use of legal knowledge or skill. *Grafner*, 393 Ill. App. 3d at 800. Noting that simplicity and informality are the intended features of such hearings, the court reasoned that the representative was not engaged in the unauthorized practice of law because his fact-clarifying questions were not of the nature requiring complex legal analysis and his actions did not require a lawyer's training for their proper performance. *Id.* at 801.

¶ 64    In *Sudzus*, the defendant corporation was represented at the unemployment compensation hearing by the corporation's owner, a nonattorney. The appellate court noted that the owner's actions consisted of giving simple, fact-based answers to questions and of asking clarifying questions at the hearing referee's request. *Sudzus*, 393 Ill. App. 3d at 823-24. The court reasoned that the owner had not engaged in the unauthorized practice of law because the character of his actions did not require legal knowledge or skill nor had he provided legal opinions or advice. *Id.* at 824.

¶ 65    I find the reasoning in *Grafner* and *Sudzus* persuasive. Similar to the nonattorney representative's actions in those cases, Department proceedings involve the presentation of fact-based information that does not require complex legal analysis. Since the appellate court's opinion is at odds with *Grafner* and *Sudzus*, we should address the conflict.

¶ 66    I also find *Downtown Disposal* distinguishable and the appellate court's reliance on it misplaced. In *Downtown Disposal*, we considered whether the act of filing a complaint for administrative review in the circuit court constituted the practice of law. We found that such an act was the practice of law since determining whether to file an appeal affects the substantial legal rights of the party seeking administrative review and only an attorney representing a corporation can ascertain whether an appeal is in the corporation's best interest. *Downtown Disposal*, 2012 IL 112040, ¶¶ 18-19. We did not in any way consider the issue presented in the case at bar—whether the representation of a corporation at Department proceedings constitutes the practice of law. Our statement that a corporation must be represented by counsel in legal proceedings should not be read so broadly or taken out of context. See *Touhy v. State Board of Elections*, 62 Ill. 2d 303, 310 (1976) (each opinion must be read in the context of the specific problem that was before the court). That statement preceded an explanation of the nature of

corporations and how they must always act through agents. See *Downtown Disposal*, 2012 IL 112040, ¶ 17. If this court intended to bar nonattorneys from representing corporations in every legal proceeding, we would not have authorized such representation in small claims actions. I would conclude that the appellate court erred in holding that a corporation must be represented by an attorney at Department proceedings.

¶ 67    Having reached the above conclusion, I would also address whether Johnson's actions at the hearing constituted the unauthorized practice of law. Johnson submitted two exhibits at the hearing: a picture of a carbon monoxide detector that had been installed at the property and a copy of a contract for electrical work to be performed at the property. These acts did not require the expertise that only a lawyer is qualified to provide. In fact, no legal knowledge or skill was necessary to present the exhibits. Accordingly, I would find that Johnson was not engaged in the unauthorized practice of law at the hearing.

¶ 68    Regarding Stone Street's request for cross-relief, I would remand the cause to the appellate court for consideration of Stone Street's remaining contentions. See *Standard Mutual Insurance Co. v Lay*, 2013 IL 114617, ¶ 36.

¶ 69    In conclusion, I would hold that the record is insufficient for Stone Street to invalidate the 1999 judgment, the representation of a corporation at Department proceedings does not constitute the practice of law, and Johnson was not engaged in the unauthorized practice of law. I would reverse the appellate court's judgment and remand the cause to the appellate court for consideration of Stone Street's remaining contentions.

¶ 70    JUSTICES BURKE and THEIS join in this dissent.